**Iris L. KELLOUGH, S.S. No. 220–24–5129, Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.**

No. 84–2140.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1985.

Decided Feb. 27, 1986.

Alan Hilliard Legum (Alan Hilliard Legum, P.A., Annapolis, Md., on brief), for appellant.

Joseph F. Freidman (Richard K. Willard, Asst. Atty. Gen., Washington, D.C., J. Frederick Motz, U.S. Atty., Donald A. Gonya, Asst. Gen. Counsel, Randolph W. Gaines, Deputy Asst. Gen. Counsel, A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief), for appellee.

Before PHILLIPS, CHAPMAN and SNEEDEN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Iris Kellough appeals a grant of summary judgment upholding the Secretary's denial of her claim for disability insurance benefits. Specifically, she challenges the Appeals Council's, hence the Secretary's, decision reversing that of an ALJ, that her cardiac condition did not meet the listed impairment criteria and that she was capable of performing her past relevant work, hence was not disabled. We conclude that the Secretary's determination that her condition did not meet the listed impairment criteria was supported by substantial evidence, but that the further determination that she could perform her past relevant work was not so supported. Accordingly, we vacate the district court judgment and remand to that court to remand for further agency proceedings.

### I

Kellough was admitted to the University of Maryland Hospital in December 1975 complaining of shortness of breath on exertion. An X-ray examination revealed an enlargement of the heart due to mitral stenosis, a stricture of the mitral valve. Cardiac catheterization indicated an occlusion of the right external iliac and femoral arteries. Kellough underwent open-heart surgery in January 1976 to enlarge the mitral opening and underwent emergency surgery to remove a blood clot from her leg. She was discharged with a diagnosis of rheumatic heart disease, which affects the heart valves, and iliac and femoral embolus.

Kellough had a second cardiac catheterization in March 1980 that indicated a worsening of her rheumatic heart disease. In April 1980 doctors at the University of Maryland hospital replaced her mitral valve with an artificial valve and repaired the tricuspid valve. Evidence introduced at the hearing before the ALJ revealed that the tricuspid repair was unsuccessful, resulting in a severe leak in the valve.

Kellough's treating physician, Dr. Magram, in a report dated October 15, 1982, stated that Kellough suffers congestive heart failure and has an enlarged heart with poor contractility. A test of the left ventricle made on March 25, 1982, produced a ventricular ejection fraction of 20%, indicating a very weak heart muscle.

Kellough filed an application for disability benefits in March 1982 and alleged that she had been disabled since December 1975. All parties agree that Kellough last met the special earnings requirement of the Act on December 31, 1977, so that she would not be eligible for benefits if she became disabled after that date. After a hearing in November 1982, the ALJ rendered a decision that Kellough's cardiac condition met the "listed impairment" criteria of 20 C.F.R. Part 404, appendix 1, and that she was therefore disabled and entitled to benefits commencing December 28, 1975. The Appeals Council reviewed the case *sua sponte* pursuant to 20 C.F.R. § 404.970(a) and concluded that the ALJ's decision was not supported by substantial evidence. Specifically, the Appeals Council found that Kellough failed to show that she suffered an impairment meeting or equall-

ing the severity requirements of the Listings of Impairments set out in 20 C.F.R. Part 404, appendix 1. The Council further found that Kellough's past employment as a substitute teacher and as a self-employed ceramics shop owner was light in nature and that she retained the residual capacity to perform that work as of December 31, 1977.

Kellough sought review of the Appeals Council's decision in the United States District Court for the District of Maryland pursuant to 42 U.S.C. § 405(g). The district court entered summary judgment for the Secretary upon a conclusion that the Secretary's dispositive findings leading to denial of benefits were supported by substantial evidence.

This appeal followed.

## II

Kellough contends at the outset that judicial review of the Secretary's final decision should be limited to determining whether, as a matter of law, the Appeals Council observed the constraints upon its review powers which she argues are imposed by 20 C.F.R. § 404.970(a).[1] On that basis, she contends, since the Appeals Council's decision effectively rejected factual findings of the ALJ favorable to her, the Appeals Council's review powers were improperly exercised unless, per 20 C.F.R. § 404.970(a)(3), the ALJ decision was not supported by substantial evidence. To determine, in judicial review, whether the

Secretary's decision on this basis was legally erroneous therefore, she contends, requires application of the same standard of review to the ALJ's factual findings as was applied by the Appeals Council. That standard is whether the ALJ's dispositive findings were supported by substantial evidence. If they were so supported, the Appeals Council erred, and the district court should be reversed; if they were not so supported, the Appeals Council did not err and the district court should be affirmed. In short, her contention is that judicial review of the Secretary's dispositive factual findings at odds with those of an ALJ should be directed not at whether the Secretary's findings are supported by substantial evidence, but at whether the ALJ's contrary findings are so supported. Kellough then, of course, contends that, applying this standard, we should find the ALJ's favorable findings so supported and reverse the district court's judgment upholding the Secretary's decision to the contrary.

In *Parris v. Heckler*, 733 F.2d 324 (4th Cir.1984), we rejected the position urged here by Kellough. We held instead that judicial review of a final decision of the Secretary which is at odds in its factual findings with that of an ALJ focuses upon the Secretary's decision rather than the ALJ's. *Id.* at 326. If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported. *Id.*[2]

---

1. 20 C.F.R. § 404.970 states:
   § 404.970 Cases the Appeals Council will review.
   (a) The Appeals Council will review a case if—
   (1) There appears to be an abuse of discretion by the administrative law judge;
   (2) There is an error of law;
   (3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or
   (4) There is a broad policy or procedural issue that may affect the general public interest.
   (b) If new and material evidence is submitted with the request for review, the Appeals Council shall evaluate the entire record. It will then review the case if it finds that the

administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record.

2. This was the critical holding on the point at issue in *Parris*. While the *Parris* panel also suggested in dicta that the *sua sponte* review provisions of 20 C.F.R. § 404.970(a), see, supra, note 1, might impose some judicially enforceable limits upon Appeals Council *sua sponte* review of ALJ initial decisions, *Parris*, 733 F.2d at 326, it obviously did not hold, given the direct holding on the point, that the regulation's effect is to expose any Appeals Council factfindings that are at odds with those of ALJ's to plenary judicial review. At most, the *Parris* dicta on this point implies that where the basis for an Appeals Council decision on *sua sponte* review is

This critical holding in *Parris* was rested upon the general principle, as announced in *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), that ordinarily [3] governs judicial review of final agency decisions reached on appeal or review of an initial decision (now typically that of an ALJ) where the final agency decision rejects factual findings upon which the initial decision was based. As explained in *Universal Camera*, judicial review under the general "substantial evidence" standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(E),[4] contemplates that in such circumstances judicial review is properly focused upon the final agency decision and its component factfindings; the judicial inquiry is whether *those* findings are supported by substantial evi-

demonstrably outside the scope of the *grounds* specified for § 404.970(a) review, this might violate the regulation. In *Parris*, it sufficed that the demonstrable grounds for Appeals Council decision, lack of substantial evidentiary support, was clearly within the scope of § 404.970(a), whatever the legally enforceable effect of that regulation in another case might be.

We observe that the circuits that have directly addressed this point are split. *Compare Taylor v. Heckler*, 765 F.2d 872 (9th Cir.1985) (20 C.F.R. § 404.970(a) does not impose judicially enforceable deference by Appeals Council to unappealed ALJ factfindings supported by substantial evidence); *Lopez-Cardona v. Secretary*, 747 F.2d 1081 (1st Cir.1984) (same); *Baker v. Heckler*, 730 F.2d 1147 (8th Cir.1984) (same); *with Newsome v. Secretary*, 753 F.2d 44 (6th Cir. 1985) (contra); *Scott v. Heckler*, 768 F.2d 172 (7th Cir.1985) (same; following *Newsome*); *Parker v. Heckler*, 763 F.2d 1363 (11th Cir.1985) (same).

We can leave for another day the specific implications of our recognition in *Parris* that 20 C.F.R. § 404.970(a) may impose some judicially enforceable limits on Appeals Council own-motion review. In this case, as in *Parris*, there is no doubt that the Appeals Council's decision in review lay within the scope of the grounds specified in *that* regulation.

3. Different statutory and regulatory regimes governing particular agency adjudications may of course dictate a different standard of judicial review in cases where there are conflicting factual findings in initial and final agency decisions. An apt example, because of the close relation to social security disability claims, is the special statutory and regulatory regime governing judicial and internal agency review of claims under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. Under that regime, internal agency review of initial decisions by ALJs is by the Benefits Review Board (BRB) of the Department of Labor, 30 U.S.C. § 932(a), in conformity with the procedures for that Board's review of claims under the Longshore and Harbor Workers Compensation Act, 33 U.S.C. §§ 901 et seq.; *id.* § 921. Judicial review of final BRB decisions is by the courts of appeal on petition, rather than, as in social security disability cases, by civil action commenced in district court. 33 U.S.C. § 921(c). Most significantly, the scope and standards for BRB review of initial ALJ decisions are rigorously circumscribed by both statute and regulation in ways that clearly constitute it purely an appellate review body. *See* 33 U.S.C. § 921(b)(3) ("The Board's orders shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole."); 20 C.F.R. § 802.301 (BRB "not empowered to engage in a de novo proceeding or unrestricted review ... findings of fact ... may be set aside only if they are not ... supported by substantial evidence in the record considered as a whole ...").

Under this regime the adjudicative function of the Department of Labor's BRB is critically different from that of the Social Security Administration's Appeals Council. As one court has put it, under the LHWCA statutory and regulatory regime, the BRB's function "is more akin to that of a District Court." *Alford v. American Bridge Division, United States Steel Corp.*, 642 F.2d 807, *modified in part* 655 F.2d 86, *modified* 668 F.2d 791 (5th Cir.1981). For this reason, it is generally held in this circuit and elsewhere that judicial review by courts of appeals of BRB decisions rendered in review of ALJ initial decisions applies the same standard of review, including substantial evidence as to factfindings, as does the BRB, thereby according deference in cases of conflicting findings to those of the ALJ rather than those of the BRB. *See Zbosnik v. Badger Coal Co.*, 759 F.2d 1187, 1189–90 (4th Cir.1985) (black lung claim); *see also Newport News Shipbuilding & Dry Dock v. Director*, 681 F.2d 938, 941 (4th Cir.1982) (LHWCA claim); *Sun Shipbuilding & Dry Dock Co. v. McCabe*, 593 F.2d 234 (3d Cir.1979).

4. *Universal Camera* dealt directly with the standard of judicial review of orders of the National Labor Relations Board, but the Court expressly held that the factfinding review standard prescribed by the National Labor Relations Act, now 29 U.S.C. § 160(f), was identical to that prescribed for general application by the Administrative Procedure Act, now 5 U.S.C. § 706(2)(E), which controls judicial review of the agency decisions here in issue. The *Universal Camera* review principle that emerged is therefore applicable here.

dence. In making this assessment, conflicting factual findings by the initial decision-maker are not, however, to be ignored; they are a part of the "record as a whole" before the reviewing court. They are therefore properly considered in determining whether substantial evidence on the record as a whole supports the final agency decision; and where credibility and witness demeanor are critical, they may properly be accorded particular weight for this limited purpose. *Universal Camera*, 340 U.S. at 492–97, 71 S.Ct. at 466–69; *see Parris*, 733 F.2d at 326. Nevertheless, because Congress has laid the ultimate responsibility and authority for adjudicating social security claims—necessarily in both their factual and legal components—upon the Secretary, *see* 42 U.S.C. § 405(b)(1), it is the Secretary's final decision rather than that of any initial decisionmaker that should be the direct object of judicial review. *Parris*, 733 F.2d at 326; *accord Taylor v. Heckler*, 765 F.2d 872 (9th Cir.1985); *Lopez-Cardona v. Secretary*, 747 F.2d 1081 (1st Cir.1984); *Baker v. Heckler*, 730 F.2d 1147 (8th Cir. 1984); *contra, Newsome v. Secretary*, 753 F.2d 44 (6th Cir.1985); *Scott v. Heckler*, 768 F.2d 172 (7th Cir.1985); *Parker v.*

*Heckler*, 763 F.2d 1363 (11th Cir.1985) (split panel decision).

■ On the direct authority of *Parris*, we therefore reject Kellough's contention that we should review the district court judgment by assessing whether the ALJ's favorable decision was supported by substantial evidence.[5] We apply instead the *Parris* standard—whether the Secretary's unfavorable decision was so supported; and to that we now turn.

### III

### A

■ We first hold that substantial evidence supports the Secretary's conclusion that Kellough's impairment did not meet or equal the Listings of Impairment on December 31, 1977. The ALJ had relied heavily on Dr. Magram's October 1982 report to find that Kellough's cardiac impairment met or equalled the listing. The critical evidence contained in that report was the result of the heart scanning test on March 25, 1982, which revealed a left ventricular ejection factor of 20%. The Listings provide that cardiac impairment meets the disability level of severity when a ven-

---

**5.** While in technical terms we need go no further than simply to apply *Parris* as binding circuit authority on the issue, we take the opportunity to reaffirm and briefly to elaborate on the rationale for that decision.

We do so by emphasizing the practical difficulties that would attend application of the standard of review for which claimant here contends and that was rejected in *Parris*. The most direct effect of that standard would be to require reviewing courts to accord deference to any ALJ factfindings at odds with those of the Appeals Council made on review or appeal. This would necessarily subvert the authority of the central administrative reviewing authority validly exercising the Secretary's statutory power and responsibility finally to adjudicate these claims at the administrative level. 42 U.S.C. §§ 405(b)(1), (g), (h). Aside from the likelihood that this would violate congressional intent as expressed in the statutory provisions just cited, it would seriously inhibit the ability of the Secretary, through the Appeals Council, to develop a coherent adjudicative process by the many ALJs involved throughout the country in processing social security disability claims. Judicial review limited to holding the Appeals Council itself within the bounds of rationality implic-

it in the substantial evidence standard suffices as a safeguard against arbitrary or irrational efforts by the Secretary to develop and enforce such a coherent administrative adjudicative process. Second-guessing, largely independent, direct factfinding review of ALJ decisions by the federal courts of all the circuits is not a better answer. Indeed, an added virtue of the standard applied in *Parris* is that it minimizes to some extent the degree of involvement of federal courts in time-consuming and necessarily shrouded direct review of initial administrative factfindings at two and three levels removed from the ALJ's evidentiary hearing.

It is no answer to suggest that the Secretary has self-inflicted this wound upon the agency by the deliberate act of promulgating 20 C.F.R. § 404.970. The Secretary's interpretation of that regulation, to which we owe deference, is that it was not intended to require judicial deference to ALJ findings rejected upon own-motion review by the Appeals Council. This is a completely reasonable interpretation, and provides an independent and quite adequate basis for the decision in *Parris*. *See Baker v. Heckler*, 730 F.2d 1147, 1149–50 (8th Cir.1984) (Arnold, J.).

tricular ejection factor is less than 30%. The ALJ also found that Kellough suffered from serious heart disease—mitral valve insufficiency—as of December 1975.

What the record fails to show, however, is that the mitral valve insufficiency caused a less than 30% ejection factor as of December 1977. The medical evidence establishes that Kellough's basic impairment, rheumatic heart disease, is a degenerative ailment. The medical records are devoid of any tests in the period from the surgery in 1976 until December 1977 that show an ejection factor of less than 20%. The lack of such medical evidence taken in conjunction with the degenerative nature of the disease leads to the inference properly reached by the Appeals Council—the weakness of the heart muscle did not meet the severity requirement of the Listings in December 1977.

There is no question that Kellough suffered a serious heart impairment in December 1977. To be disabled under the Listings, however, the claimant must present evidence that the impairment meets or is medically equivalent to an impairment listed. Kellough failed to carry this burden, and we affirm the Secretary's decision that she was not disabled by an impairment meeting the Listings of Impairment in 1977.

### B

Having rejected the ALJ's determination of disability based upon the "listed impairment" criteria, the Appeals Council went further and determined that neither had Kellough established that her concededly severe impairments nevertheless prevented her from performing her past relevant work at the critical time. Because, under the sequential evaluation process, *see Hall v. Harris,* 658 F.2d 260 (4th Cir.1981); 20 C.F.R. §§ 404.1501–.1569 (1980), this latter determination effectively cut off the remaining available means for establishing disability, the Appeals Council flatly reversed the ALJ's decision and decided that Kellough was not disabled.

The Appeals Council's determination that Kellough had not established her inability to engage in past relevant work therefore addressed and decided an issue not considered by the ALJ. When the ALJ found disability under the listed impairment criteria, there was of course no need to proceed to that potential alternative basis.

It may be appropriate in some cases for the Appeals Council to find nondisability on grounds not considered by an ALJ who had found disability on a basis also rejected. A claimant is of course entitled, and can be held, to present all the favorable evidence available to establish disability under any of the ways provided by the Secretary. *See* 20 C.F.R. § 404.1512. Where the record made before an ALJ contains substantial evidence supporting the Appeals Council's rejection not only of a basis for disability found by the ALJ but of all other potential bases, that decision may therefore properly be upheld on judicial review. "[T]he agency has all the powers [on review of an initial decision] which it would have in making the initial decision except as it may limit the issues on notice or by rule." 5 U.S.C. § 557(b).[6]

■ Here, however, we do not think the record contains substantial evidence supporting the Appeals Council's finding that Kellough could perform her past relevant work. Essentially, the Appeals Council

---

6. When the Appeals Council decides to review a case, it is required by regulation to give notice to all parties of the "reasons for the review and the issues to be considered." 20 C.F.R. § 404.-973 (1980). In a case, such as the instant one, where the Appeals Council intends to consider not only the issue upon which an ALJ has found disability but other issues upon which disability might have been established, notice of the other issues might properly be held, under 42 U.S.C. § 405(b), to be a condition of its power to consider them on review. We need not decide that here in view of our conclusion that the Appeals Council's finding on the issue not considered by the ALJ was, in any event, unsupported by substantial evidence. The notice is not included in the joint appendix to the briefs before us, and we have not looked beyond that. If it failed to give express notice of this issue, that would only be further possible reason to require administrative reconsideration of the issue.

found that Kellough's own testimony indicated that at the critical time she could do "light work," and that her "past relevant work"—secretary, substitute teacher, self-employed ceramics worker—fell by definition into the "light" category. This finding was rather cursorily based upon an attending physician's notes which from time to time during 1976 and 1977 indicated that Kellough "felt well," was "free of cardiac symptoms," had "no dyspnea," and "was performing floor exercises including sit-ups"; on Social Security Ruling 82–51 indicating that heart valve surgery does not ordinarily compromise the capacity to do light work; and on the Appeals Council's essential rejection of Kellough's subjective assessments of physical limitations.

Considered on the record as a whole, we do not believe the Secretary's finding, rested essentially on these physician's notes, the Social Security Ruling, and the rejection of Kellough's subjective apprehensions of physical limitation is supported by substantial evidence.

The meaning of the physician's notes is most ambiguous and the record contains no explanatory testimony from the physician. "Feels well" and "normal activity" must be read in context; the claimant has established that she suffered a severe cardiac impairment in 1975. A note entered in November 1975, just one month before she was hospitalized for open heart surgery, also stated that she "feels well." Kellough testified without contradiction that her "normal activity" following her surgery was very limited. She stopped working, did no household chores, and could do very little lifting or prolonged standing. The notes themselves make no mention of the range of activity that Kellough could perform, nor do they establish that Kellough's rheumatic heart disease, a degenerative ailment, had been "cured" by surgery.

The Secretary's discounting of claimant's subjective complaints of pain and exertional limitation was rested on the ground that the medical evidence failed to establish a disabling impairment or a need for "potent and protracted pain medication." But the medical evidence overwhelmingly establishes that Kellough suffered from rheumatic heart disease in 1975 and that her condition had degenerated by 1982 to a point where her heart muscle was extremely weak. It therefore appears that the Appeals Council discounted the claimant's testimony on the basis of a lack of need for "protracted" pain medication, the generalized statement of Social Security Ruling 82–51 and the references in the physician's notes to her "normal activity" and "feeling well."

The first basis ignores the fact that claimant's major complaint was not pain but inability to perform routine tasks because of extreme fatigue and shortness of breath. Both complaints are symptomatic of mitral valve insufficiency, as Dr. Magram's report points out. The medical evidence indicates that Kellough suffered from mitral valve insufficiency in 1975, in 1980, and in 1982.

The reliance on Social Security Ruling 82–51 is equally insubstantial. The ruling clearly contemplates that individual cases may vary from the generalized statement. The ruling itself notes that congestive heart failure in conjunction with ischemic heart disease could compromise the ability to perform light work. The record is silent concerning Kellough's having congestive heart failure in 1977, but Dr. Magram's report states that she suffered such failure in 1980.

Finally, the isolated references in the physician's notes to "feeling well" and "normal activity" are not a substantial basis for rejecting as incredible the claimant's subjective complaints of exertional limitation. The claimant produced medical evidence of an impairment that could be expected to produce such symptoms, a requisite showing when disability is sought to be predicated in part on pain and exertional limitation. *See Parris*, 733 F.2d at 327; Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423(d)(5). The ALJ apparently found the claimant's testimony credible in reaching his decision, a factor, as indicated, that we must take into account in assessing whether substantial

evidence supports the Secretary's conflicting final decision.

We therefore cannot let stand the Appeals Council's finding, on an issue not considered by the ALJ, that Kellough could at the critical time perform her past relevant work. The question then arises of the proper disposition of the appeal with this dispositive finding rejected.

## IV

All things considered, we believe the case should be remanded for further agency proceedings in light of our holdings on the two critical findings by the Appeals Council. Our decision affirms the Secretary's final decision that Kellough's impairment did not meet the listed criteria, so that disability was not properly found on that basis. It further establishes, however, that Kellough has not properly been found not disabled on the basis that she could at the critical time perform her past relevant work.

The appropriate disposition therefore is to remand for agency reconsideration of her claim. This should start at the point in the sequential evaluation process where it has been conclusively established that Kellough's impairments do not meet the listed criteria, but with the issue open as to whether she might be able to establish disability under the alternatives remaining under the sequential evaluation process. *See* 20 C.F.R. § 404.1520.

The judgment of the district court is therefore vacated and the case is remanded to the district court with instructions to remand to the Secretary for further proceedings in accordance with this opinion.

VACATED AND REMANDED.