John P. REDDINGTON, Petitioner,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Respondent.[1]

No. 84–104–CIV–4.

United States District Court, E.D. North Carolina, New Bern Division.

July 29, 1986.

1. Dr. Otis R. Bowen is substituted as a party in this suit in place of Margaret Heckler pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Jack B. Crawley, Jr., Poyner & Spruill, Walter J. Early, Early & Chandler, Rocky Mount, N.C., for petitioner.

James G. Carpenter, Asst. U.S. Atty., Civ. Section, Raleigh, N.C., for respondent.

ORDER

TERRENCE WILLIAM BOYLE, District Judge.

Petitioner John P. Reddington (claimant) filed this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Secretary of Health and Human Services denying him old-age insurance benefits under Title II of the Social Security Act (the Act). The claimant also seeks mandamus relief pursuant to 28 U.S.C. § 1361. The case is before the court on the parties' cross-motions for summary judgment. Because the court finds that substantial evidence supports the Secretary's final decision, in the form of an Appeals Council's ruling, respondent's motion for summary judgment is granted and the Secretary's decision is affirmed.

I.

Claimant applied for Social Security old-age insurance benefits on December 16, 1981. A claimant must be "fully insured" in order to receive these benefits. 42 U.S.C. § 402(a). A claimant becomes "fully insured" by accumulating a requisite number of "quarters of coverage" in employment covered under the Act. 42 U.S.C. § 414. Only self-employment and wage income are considered in determining how many quarters of coverage an individual has accumulated. 42 U.S.C. § 413. All parties agree that claimant needs thirty-one quarters of coverage in employment covered by the Act in order to be fully insured within the meaning of § 402.

Claimant's application for benefits was denied by the Social Security Administration and he was granted a hearing before an Administrative Law Judge (ALJ) in May, 1983. The ALJ concluded that claimant was fully insured, finding that he possessed at least thirty-six quarters of coverage. The ALJ noted that the issue before him was whether claimant's income during the years 1978 through 1980 was "wages" or self-employment income so as to entitle claimant to twelve additional quarters of coverage. The judge found claimant entitled to fifteen quarters of coverage for the years 1974 through 1976, nine quarters for employment prior to 1951, and twelve quarters for the years 1978 through 1980.

The ALJ's decision was handed down on May 23, 1983. The Social Security Administration (SSA) did not appeal from this determination. Approximately six months later, in December, 1983, the Office of Hearings and Appeals notified claimant that the Appeals Council was reopening his case *sua sponte* on the grounds that evidence considered by the ALJ clearly showed that an error was made in adjudicating claimant's claim. *See* 20 C.F.R. §§ 404.988(b), 404.989(a)(3). On January 24, 1984, the Appeals Council reviewed the ALJ's ruling and held that the claimant was not entitled to old-age benefits because he did not possess the necessary quarters of coverage. The Appeals Council found

that claimant possessed only fifteen quarters of coverage, i.e., from March, 1974 through December, 1977. Claimant then commenced the present civil action in this court on October 3, 1984.

## II.

The court is called upon to determine whether the Appeals Council properly computed claimant's quarters of coverage for the fiscal years 1978, 1979 and 1980. Claimant maintains that the ALJ correctly included these twelve quarters in computing his total number of quarters of coverage. The Secretary contends that substantial evidence exists in the record to support the Appeals Council's exclusion of these twelve quarters.

During the years 1978, 1979 and 1980, Reddington performed services in connection with the operation of apartment complexes owned by a partnership doing business as Greenmount Associates (GMA). Claimant was a general partner in this partnership, as well as in two other partnerships, i.e., Rose Hill Associates (RHA) and Rose Hill Associates Water Company (RHAWC) during the years 1978, 1979 and 1980. Pursuant to a partnership agreement dated October 15, 1975, claimant received specific payments from GMA for managing the apartment complexes in addition to receiving a distributive share of the profits or losses incurred by the partnership. Claimant's specific payments for his services were payable without regard to partnership income and did not affect his distributive share of partnership income or loss. Claimant's income tax records indicate he received payments for services from GMA in the amounts of $15,360, $14,080 and $16,640 for the years 1978, 1979 and 1980, respectively. GMA operated at a loss for the fiscal years 1978 through 1980. RHWAC operated at a loss for the fiscal years 1979 and 1980.

The ALJ determined that the relationship between claimant and GMA was that of employer and employee notwithstanding claimant's status as a general partner in the employer-partnership. On these facts,

the ALJ found the income for claimant's employment during the years 1978, 1979 and 1980 to be "wages" qualifying the claimant for an additional twelve quarters of coverage towards the thirty-one needed for eligibility.

The Appeals Council reopened and reversed the ALJ and found that the claimant's income for the years 1978, 1979 and 1980 could not be characterized as "wages" because claimant, as a general partner of GMA, was the employer and therefore could not be an employee of the partnership. The Appeals Council also ruled that income reported for these years was not self-employment income under the Act. The Appeals Council found that GMA's income was "rental income" within the meaning of 42 U.S.C. § 411(a)(1). The Council then concluded that GMA's payments to claimant for his managerial efforts were merely "guaranteed payments" of the same nature and quality as GMA's partnership income, i.e., "rental income." Thus, the Appeals Council excluded those payments from self-employment earnings pursuant to 42 U.S.C. § 411(a)(1) and 20 C.F.R. § 404.1082(d).

## III.

This case presents several issues for resolution. The first issue is whether the Appeals Council can reopen a decision *sua sponte* when that decision was resolved in a claimant's favor. Second, the court must determine whether claimant's income for the years 1978, 1979 and 1980 was properly excluded in computing his quarters of coverage for old-age insurance purposes. Third, the court must determine whether mandamus relief is warranted in this case.

### A. *Reopening of Cases Sua Sponte*

The first issue is quickly resolved. The Appeals Council is empowered to reopen a case *sua sponte* within four years of the date of initial determination if "good cause" exists. 20 C.F.R. § 404.988(b) (1985). *See also Zimmermann v. Heckler,* 774 F.2d 615, 617 (4th Cir.1985). Good cause to reopen exists when "[t]he evidence

that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. § 404.989(a)(3) (1985). The error may be legal or factual in nature. *Munsinger v. Schweiker*, 709 F.2d 1212, 1215–16 (8th Cir. 1983).[2]

As will be explained below, the ALJ clearly erred in characterizing the claimant as an "employee" of GMA. The ALJ also erred in relying on Exhibit 9 in concluding that claimant earned nine quarters of coverage for pre–1951 employment. He described Exhibit 9 as a certified earnings record that included pre–1974 covered earnings. In fact, Exhibit 9 consists of partially completed "requests for scouting" forms which report earnings from 1974 through 1976. The Appeals Council properly reopened the ALJ's decision given these errors.

■ Claimant also argues that the ALJ's findings are supported by substantial evidence. However, judicial review of a final decision of the Secretary which is at odds in its factual findings with that of an ALJ focuses upon the Secretary's final decision rather than upon the ALJ's. *Kellough v. Heckler*, 785 F.2d 1147 (4th Cir.1986). Courts in judicial review must uphold an Appeals Council decision if it is supported by substantial evidence. *Id.* at 1151. The ALJ's findings are not binding on the Appeals Council. *Lovejoy v. Heckler*, 790

F.2d 1114, 1116 (4th Cir.1986). Since the Appeals Council properly reopened this case and did not exceed its authority, this court's review of the Council's decision is confined to ascertaining whether its factual findings are supported by substantial evidence. *See Lovejoy*, 790 F.2d at 1116, citing 42 U.S.C. § 405(g). *See also Kellough*, 785 F.2d at 1149 n. 2.

Federal courts review the Secretary's factual findings to establish that those findings are supported by substantial evidence. Yet the courts also must assure that the Secretary's ultimate conclusions are legally correct. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir.1980). The entire record is examined to insure that the Secretary has applied correct legal standards. *Keeney v. Heckler*, 568 F.Supp. 1145, 1148 (D.Md.1983). The Appeals Council decision in this case contained factual findings consistent to a great extent with the ALJ's. The Council incorporated most of the ALJ's evidentiary findings into its own decision. The Secretary's final decision differed from the ALJ's most notably in the legal conclusions drawn from these basically undisputed facts.[3]

All agree that the claimant served as exclusive manager of Greenmount Associates' apartment complexes pursuant to a partnership agreement executed in 1975. They also agree on the compensation claimant received for his managerial services. The question is whether that compensation

---

**2.** Of course, any reopening for legal error must be based on an incorrect interpretation of the law as construed *at the time of the administrative hearing*. *See* 20 C.F.R. § 404.989(b) (1985).

**3.** There is some factual discrepancy as to whether *vel non* claimant's employment prior to 1951 entitles him to nine additional quarters of coverage for old-age insurance purposes. A review of the administrative decisions in this case and the hearing transcript reveals that this issue was not explicitly presented by claimant before either the ALJ or the Appeals Council. The ALJ framed the specific issue before him as whether the claimant's earnings record may be credited with wages or self-employment income for the years 1978, 1979 and 1980. There is no evidence indicating that the claimant contested the SSA's initial determination that he was not entitled to any quarters of coverage for employment

prior to 1974. In fact, claimant did not press his claim for nine additional quarters of coverage relating to pre–1951 employment prior to filing a reply brief in this case. The court therefore is hesitant to address this particular issue, given claimant's failure to raise this specific claim in administrative proceedings. *See United States v. One 1971 Mercedes Benz*, 542 F.2d 912 (4th Cir.1976).

Furthermore, the court need not address the merits of this issue at this time. Since the court affirms the Secretary's final decision for the reasons given hereafter, claimant at most possesses twenty-eight quarters of coverage, including the nine quarters of coverage for pre–1951 employment. Since this total falls short of the thirty-one quarters required to entitle claimant to old-age benefits, the inclusion of these additional quarters would still not entitle claimant to benefits at this time.

is to be treated as "wages" or self-employment income. Because the Appeals Council interpreted federal tax law as precluding claimant from characterizing this compensation as "wages," this characterization is a legal conclusion. In contrast, the Secretary's determination that GMA's income from the apartment complex was "rental income" presents a mixed question of fact and law. The parties agree on the specific services claimant provided in his capacity as apartment manager. The characterization of income derived from these services as "rental income" is a legal conclusion. The court must apply different standards of review in resolving the "wages" and "rental income" issues.

### B. *The Quarters of Coverage Question*

While the Appeals Council's findings are supported by substantial evidence in the record, it is less certain whether the Secretary applied pertinent legal standards in concluding that claimant's income fell within § 411(a)(1)'s "rental income" exclusionary provision. However, because another legal theory exists which prevents claimant from receiving at least eight quarters of coverage, the Secretary's final decision must be affirmed.

### 1. *Wages v. Self-Employment Income*

■ Entitlement to quarters of coverage flows from "wages" earned in employment or from net earnings from self-employment under the Act. It is undisputed that the claimant was a general partner in the GMA partnership for the years 1978 through 1980. Federal tax law provides that claimant could not be simultaneously classified as both an employee and a general partner of GMA. Bona fide members of a partnership are not employees of the partnership within the meaning of the Federal Insurance Contributions Act. IRS Revenue Ruling 69–184. A partner who devotes his time and energies to providing services to the partnership is a self-employed individual rather than an employee. *Id.* Any fixed salary received by a partner for his services rendered to the partnership is not "wages" with respect to employment but rather is a "guaranteed payment" which is includable in the recipient partner's gross income subject to self-employment tax. *Id.;* IRS Revenue Ruling 56–676. Therefore, the ALJ erred as a matter of law in characterizing claimant's income for the years 1978 through 1980 as "wages." [4]

### 2. *Claimant's Income As "Rental Income"*

Given that claimant's income for the three years in question is not "wages," claimant can qualify for quarters of coverage only if that income can be qualified as net earnings from self-employment (NESE) under the Act. The Act defines NESE as:

> "The gross income, as computed under Subtitle A of the Internal Revenue Code of 1954, derived by an individual from any trade or business carried on by such individual, less the deductions allowed under such subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss ... from any trade or business carried on by a partnership of which he is a member; except that in computing such gross income and deductions and such distributive share of partnership ordinary income or loss—
>
> (1) There shall be excluded rentals from real estate and from personal property leased with the real estate...."

42 U.S.C. § 411(a). The Appeals Council found that any income which GMA derived from operation of its apartment complex was "rental income" excluded in determining claimant's NESE.

Only those services provided for the occupant's convenience may be included in computing one's net earnings from self-employment. 20 C.F.R. § 404.1082(d). Services provided solely in connection with the

---

**4.** The court notes that at least in one year, i.e., 1980, claimant characterized his fixed salary as guaranteed payments and included the same in a Schedule K–1 "Partner's Share of Income" form.

rental of rooms for occupancy are not included in the Act's definition of NESE. Hotel services and the use of space in parking lots, warehouse or storage garages are considered to be services provided to occupants. 20 C.F.R. § 404.1082(d)(2)(i) (1985). SSA regulations further provide that "we do not consider the furnishing of heat and light, the cleaning of public entrances, exists, stairways and lobbies and the collection of trash, as services provided to the occupant." 20 C.F.R. § 404.-1082(d)(2)(ii)(1985).

There is no dispute as to the particular services claimant performed in his capacity as apartment manager for GMA's several apartment complexes. The record reveals that claimant's responsibilities included providing leases, repairs, replacement and cleaning of rugs, instruction to tenants regarding proper cleaning of rugs, ground maintenance and maintenance of heating and air cooling systems. Claimant also received and answered service calls. Among the miscellaneous services provided by GMA through claimant was the servicing of plugged drains and other plumbing problems.

The Appeals Council characterized claimant as "the one who places all the orders for the materials, writes all checks for invoices, payroll, etc." The Council concluded that GMA did not furnish services or supplies to its apartment tenants. Since GMA income was therefore "rental income," the Council continued, then *a fortiori* claimant's income also fell within that category excludable from self-employment income computation.

The claimant's income is not easily characterized. The characterization of his income as either rental or self-employment income depends upon the characterization of GMA's income for the years 1978 through 1980. Claimant's income characterization is inextricably intertwined with that of GMA because the former was a general partner in the latter. Claimant performed his services on behalf of GMA, and the nature of his income, received from the partnership, was no different from the

nature of those payments received by GMA from its tenants; the existence of GMA as a partnership entity does not *per se* alter the characterization of income received from it and distributed to its recipient partners. *Cf. Ames v. Finch,* 297 F.Supp. 1147, 1149 (C.D.Ca.1969) (Social Security regulations discriminating between NESE and rental income apply equally to partnership and individual owners of multi-housing units).

It is a close question whether GMA's income for the years 1978 through 1980 constitutes self-employment income or rental income. The tedious task of discerning between services rendered to occupants and services rendered solely to make space available for occupancy is further compounded by case law which is neither clear nor exhaustive in treating this particular subject matter. *Compare Hudson v. Celebrezze,* 220 F.Supp. 738, 740–41 (E.D.N.C. 1963) (customary services rendered solely to make space available for occupancy, as well as services performed in proper maintenance of premises are not considered services provided to occupant), *with Bunch v. Schweiker,* 681 F.2d 249, 251 (4th Cir.1982) (implying that cleaning of premises, providing of laundry facilities and maintaining of grass on premises may constitute services provided to occupants). Furthermore, there is a question as to whether the court must treat the entire sum of payments made to GMA as self-employment income if only a small fraction of those payments constituted compensation for services rendered to those tenants. *See Delno v. Celebrezze,* 347 F.2d 159, 163 & n. 10 (9th Cir.1965). This court is not persuaded that the *Delno* court has treated this problem in a comprehensive manner.

However, the court need not resolve these complex issues. There exists a separate legal ground which mandates that the Secretary's denial of benefits be affirmed. Therefore, the court affirms the Appeals Council decision on a separate and distinct legal ground.

### 3. *Computation of Claimant's NESE for 1978–1980*

■ Assuming, *arguendo*, that claimant's income for the years 1978 through 1980 is "self-employment income," as that term is defined in the Act, the court must proceed to determine whether claimant's NESE was of a sufficient amount for these years to entitle him to quarters of coverage for that time period. A close view of the record in this case reveals that for at least 1979 and 1980 claimant's guaranteed payments were offset by his distributive share of losses incurred from partnerships of which he was a member. *See* 42 U.S.C. § 411(a). Accordingly, claimant at most is entitled to four quarters of coverage for the years 1978 through 1980. This number would provide claimant with at most twenty-eight quarters of coverage, still leaving him ineligible to receive social security old-age insurance benefits. Accordingly, the Secretary's decision must be affirmed on this separate legal ground.

■ As mentioned earlier, a claimant's NESE is defined under the Act as gross income less the distributive share of income or loss from any trade or business carried on by a partnership of which the claimant is a member. Federal tax law sheds further light on this definition. Where a partner's distributive share includes a loss resulting from the operation of the partnership business, including the deduction for a guaranteed payment treated as a business expense, the partner's self-employment income is the net amount computed by applying to the guaranteed payment the distributive share of loss. *See* 26 I.R.C. § 707(c). *See also* Revenue Ruling 56–675.

This method of determining NESE precludes plaintiff from claiming quarters of coverage for the years 1979 through 1980. Plaintiff's tax returns reveal that he claimed his distributive share of losses from the RHAWC partnership as totaling $18,167.41 for 1979 and $18,721.29 for 1980. Since claimant's NESE consists of the aggregate of net income and losses, a loss sustained in one trade or business carried on by an individual will operate to offset the income derived by him from another trade or business. *See* 26 C.F.R. § 1.1402(a)–2(c). Accordingly, claimant's distributive losses from RHAWC for the years 1979 and 1980 offset the guaranteed payments he received from GMA for these years.[5] Since claimant's distributive losses from RHAWC exceed his claimed total income from GMA in 1979 and 1980, he could at best have an arguable claim for four quarters of coverage for 1978. Since the addition of these four quarters of coverage provide claimant with at most twenty-eight quarters of coverage,[6] the Secretary's decision denying him old-age insurance benefits must be affirmed.

### C. *The Appropriateness of Mandamus Relief*

■ The court's rejection of claimant's arguments on appeal preludes the issuance of a writ of mandamus. The writ is considered an extraordinary remedy which courts will issue only if the plaintiff shows: (1) that a public official has a plain duty to perform certain acts; (2) that the plaintiff has a plain right to have those acts performed; and (3) that there exists no other adequate remedy by which the plaintiff's rights can be vindicated. *Cook v. Arentzen*, 582 F.2d 870, 876 (4th Cir.1978). The court's ruling that claimant has failed to accumulate a sufficient number of quarters to qualify for insurance benefits precludes him from satisfying the three-prong test enumerated above.

### *Conclusion*

For the foregoing reasons, claimant's motions for summary judgment and mandamus relief are hereby DENIED. The respondent's motion for summary judg-

---

**5.** As mentioned earlier, claimant listed guaranteed payments in the amounts of $14,080 and $16,640 for the years 1979 and 1980, respectively.

**6.** Of course, crediting claimant with twenty-eight quarters of coverage assumes that he is entitled to the nine quarters deriving from pre-1951 employment. See *supra* n. 3.

ment is GRANTED and the Secretary's final decision is AFFIRMED.