Luther D. MULLEN,
Plaintiff-Appellant,

v.

Otis BOWEN,* Secretary of Health and
Human Services, Defendant-Appellee.

Richard G. SHEPHERD,
Plaintiff-Appellant,

v.

Otis BOWEN,* Secretary of Health and
Human Services, Defendant-Appellee.

Nos. 84–1455, 84–5352.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 16, 1985.

Decided Sept. 2, 1986.

---

* During the pendency of this action, Otis Bowen was appointed to replace Margaret Heckler as Secretary of Health and Human Services. Mr. Bowen has therefore been substituted as the named party pursuant to Fed.R.App.P. 43(c)

Timothy A. O'Rourke, Thomas Hay, Anderson, Hay and Wonch, Lansing, Mich., for plaintiff-appellant in No. 84–1455.

John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Martin F. Palus, Asst. U.S. Atty., Thomas Martin, William Kanter, Howard S. Scher, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., for defendant-appellee in No. 84–1455.

Susan K. McParland, Michigan Legal Services, Detroit, Mich., Carolyn Carter, Legal Aid Society of Cleveland, Cleveland, Ohio, Eileen P. Sweeney, Nat. Senior Citizens Law Center, Washington, D.C., Neal S. Dudovitz, Sally Hart Wilson (argued), Peter Komlos-Hrobsky, Eugenie Denise Mitchell, Nat. Senior Citizens Law Center, Los Angeles, Cal., for amicus curiae.

Alva A. Hollon, Jr. (argued), Hollon, Hollon & Hollon, Hazard, Ky., for plaintiff-appellant in No. 84–5352.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Karl L. Anderson, Monica Wheatley (argued), William Kanter, Dept. of Justice, Washington, D.C., Howard S. Scher, Lead Counsel, for defendant-appellee in No. 84–5352.

Before LIVELY, Chief Judge, and ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE,** KRUPANSKY, WELLFORD, MILBURN, GUY and NELSON, Circuit Judges.

** On July 1, 1986, Judge Contie took senior status.

1. Hearings under section 205(b), 42 U.S.C. § 405(b), must also conform to the requirements of the Administrative Procedure Act, 5 U.S.C. §§ 556–557. *See* 3 K. Davis, *Administrative Law Treatise* 319–22 (2d ed. 1980). *Cf. Richardson v. Perales,* 402 U.S. 389, 408–09, 91 S.Ct. 1420, 1430–31, 28 L.Ed.2d 842 (1971).

ENGEL, Circuit Judge.

We granted en banc rehearing in these consolidated social security disability appeals to resolve an inconsistency between two decisions by different panels of our court relating to the role of the Appeals Council in the scheme of review of disability determinations. *Compare Newsome v. Secretary of Health and Human Services,* 753 F.2d 44 (6th Cir.1985), *with Beavers v. Secretary of Health, Education & Welfare,* 577 F.2d 383 (6th Cir.1978). We are also necessarily required to consider what standard of review should be applied by the district courts and our circuit where the Appeals Council has disagreed with an administrative law judge's determination of disability and hence denied an award of benefits. We further consider whether, because of the Secretary's regulations, any different standard should govern our consideration depending upon how the issues were presented to the Appeals Council in the first place. To put these issues into their proper perspective, it is helpful at the outset to provide a brief overview of the relationship between the Secretary and the Appeals Council under the Social Security Act and regulations promulgated thereunder.

## I.

The Secretary of Health and Human Services is entrusted with the responsibility of administering disability benefits under Title II of the Social Security Act (Act). Thus, section 205(b)(1) directs the Secretary "to make findings of fact, and decisions as to the rights of any individual applying" for disability benefits. 42 U.S.C. § 405(b)(1). That section further authorizes the Secretary, "on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration" of benefits under the Act.[1]

In addition, section 205(h) provides that "[t]he findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing." 42 U.S.C. § 405(h). Finally, section 205(g) provides that, for purposes of judicial review in a federal district court, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g).

Under this scheme, the Secretary's responsibilities are broad indeed. Yet given the number of cases handled by the Social Security Administration, it is obvious that the Secretary himself cannot participate in every disability determination. As the Supreme Court observed: "The system's administrative structure and procedures, with essential determinations numbering into the millions, are of a size and extent difficult to comprehend." *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971). Congress has therefore authorized the Secretary "to make rules and regulations and to establish procedures ... which are necessary or appropriate to carry out ..." his responsibilities under the Act. 42 U.S.C. § 405(a).

Pursuant to these rulemaking powers, the Secretary has created and delegated to the Appeals Council all duties, powers and functions relating to the review of hearing decisions under Title II of the Act. *See* 20 C.F.R. §§ 404.900–.996 (1985). *See also* 20 C.F.R. § 422.205 (1985). Significantly, the

Appeals Council has possessed this authority since at least 1946.[2]

Under the Secretary's regulations, claims for social security benefits can come before the Appeals Council in a variety of ways. First, a disappointed wage earner, whose claims for coverage have been rejected by an administrative law judge (ALJ), may request review by the Appeals Council. 20 C.F.R. § 404.967. In addition, the Secretary's regulations confer general review powers on the Council, a power commonly called "own-motion" review. 20 C.F.R. § 404.969. The Appeals Council can also review a recommended decision that has been sent to it by an ALJ. 20 C.F.R. § 404.977. The Appeals Council also has jurisdiction over a social security claim where a case has been remanded by a federal district court, 20 C.F.R. § 404.983, and where the Appeals Council itself assumes the responsibility for conducting a hearing. 20 C.F.R. § 404.956. The Secretary's regulations further provide that the Appeals Council will review a case if an ALJ commits an abuse of discretion, there is an error of law, the findings of the ALJ are not supported by substantial evidence, or there is an important policy issue that may affect the public interest. 20 C.F.R. § 404.970(a). Finally, under the Secretary's regulations, the decision of the Appeals Council is binding upon the parties unless an action is commenced in a federal district court. *See* 20 C.F.R. §§ 404.981, 422.210.

---

2. *See* 11 Fed.Reg. 7943 (July 23, 1946), which states in part:

d. All duties, powers, and functions relating to the holding of hearings, the rendition of decisions, and the review of decisions in connection with administrative appeals from determinations made under Title II of the Social Security Act, as amended, and affecting benefits, lump sum or wage records, including the administration of oaths and affirmations, the issuance of subpoenas, the examination of witnesses and the receipt of evidence and all other duties, powers, and functions relating to judicial review of decisions made upon appeal, which were transferred from the Social Security Board by Reorganization Plan No. 2 of 1946 are assigned to the Office of Appeals Council in the Social Security Admin-

istration and shall be exercised by the Appeals Council, the members and referees in accordance with applicable rules as from time to time amended by the Commissioner with the approval of the Administrator....

*Id.* at 7943.

It has been noted that intermediate review boards, such as the Appeals Council, may provide a number of advantages to an agency. Such a board may relieve an agency of time-consuming work which might otherwise be devoted to reviewing a large caseload of routine type cases. In addition, such a board is frequently in a better position to assure uniform results consistent with established policies. *See* Berkemeyer, *Agency Review by Intermediate Boards,* 26 Ad.L.Rev. 61, 65 (1974).

Thus, although purely a creature of administrative law, the Appeals Council, and its role in the overall scheme of the Act, is pervasive and longstanding. Moreover, because the Secretary has delegated to the Appeals Council his "duties, powers and functions relating to the holding of hearings" under the Act, it is well settled that final action by the Appeals Council becomes indeed the final determination of the Secretary for purposes of judicial review under section 205(g), 42 U.S.C. § 405(g). *See, e.g., Hall v. Celebrezze,* 340 F.2d 608, (6th Cir.1965); *Cody v. Ribicoff,* 289 F.2d 394, 395 (8th Cir.1961); *Goldman v. Folsom,* 246 F.2d 776, 778 (3d Cir.1957); *cf. Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).

## II.

Each of these appeals involves a disability determination by an ALJ favorable to the wage-earner but which was subsequently reversed by the Appeals Council. The issue then becomes whether the statutorily-mandated deference to findings of fact under 42 U.S.C. § 405(g) runs in favor of the Appeals Council or in favor of the ALJ. In answering this question, we must also determine whether the exercise of the Appeals Council's power of review is limited by 20 C.F.R. § 404.970(a). The difficulties presented by these issues are well illustrated by the two claims before us in these appeals.

### Appeal No. 84–1455: Luther Mullen

Luther Mullen applied for disability benefits on June 22, 1981. After his application was initially denied, Mullen sought a hearing before an ALJ. The ALJ found that Mullen was suffering from two severe impairments and that, because of these impairments, Mullen could only perform sedentary work. After applying the medical-vocational grids, the ALJ concluded that, considering his age, education, and work experience, Mullen was disabled. The Appeals Council, however, on its own motion, reversed the ALJ's determination of disability. Upon reviewing the medical evidence, the Appeals Council concluded that Mullen was capable of doing light work and was therefore not disabled. The district court affirmed, finding substantial evidence to support the Secretary's decision as expressed by the Appeals Council.

Relying upon *Newsome v. Secretary of Health and Human Services,* 753 F.2d 44 (6th Cir.1985), a panel of our court initially noted that, "if the administrative law judge's decision was supported by substantial evidence, the Appeals Council had no authority to review the case and would have committed an error of law if it had done so." *Mullen v. Secretary of Health and Human Services,* 762 F.2d 509, 510 (6th Cir.1985). Because the court found that the ALJ's determination of disability was supported by substantial evidence, the court remanded the case to the district court and then to the Secretary for the purpose of awarding benefits. Thereafter, the Secretary filed a petition for rehearing en banc, challenging the correctness of the *Newsome* decision. That petition was granted on August 19, 1985.

### Appeal No. 84–5352: Richard Shephard

Richard Shepherd initially filed an application for disability on August 30, 1974. The ALJ and the Appeals Council each initially denied benefits, but the district court remanded the case to the Appeals Council because the court could not determine whether there was substantial evidence for that denial. The district court further instructed the Appeals Council to develop medical and vocational evidence and to include a psychological evaluation. Thereafter, the Appeals Council remanded to the ALJ who took additional evidence and concluded that Shepherd was disabled. The Appeals Council, however, upon reviewing the case, remanded again to the ALJ with instructions to gather more information, including a psychiatric evaluation. After this evaluation was performed, the ALJ again determined that Shepherd was disabled, but the Appeals Council refused to adopt the ALJ's conclusion and therefore denied benefits. This action became the Secretary's final decision for purposes of judicial review.

On appeal, our court reversed the district court's order affirming the denial of disability benefits because it found that the Appeals Council had failed adequately to articulate the reasons for rejecting the grant of disability benefits. The court therefore remanded the case for further findings on Shepherd's alleged disability. *See Shepherd v. Secretary of Health and Human Services,* 698 F.2d 1223 (6th Cir. 1982). On this later remand, a different ALJ also concluded that Shepherd was disabled and recommended an award of benefits. Once again, however, the Appeals Council refused to adopt the ALJ's recommendation and therefore denied benefits. After the district court affirmed the Secretary's denial, Shepherd once more appealed to the Sixth Circuit.

Relying on *Newsome,* a panel of our court noted that, "[i]f there was substantial evidence for the ALJ's determination of disability, then we must reverse the Appeals Council's denial of benefits." *Shepherd v. Secretary of Health and Human Services,* 758 F.2d 196, 198 (6th Cir.1985). The court also noted that, "[a]lthough such a principle appears to be a departure from this Court's previously articulated scope of review, *see Beavers v. Secretary of Health, Education & Welfare,* 577 F.2d 383, 386–87 (6th Cir.1978), a panel of this Court clearly announced the principle and we should apply it." 758 F.2d at 198. Accordingly, because the court found that there was substantial evidence to support the ALJ's decision, the court reversed the judgment of the district court affirming the Secretary's denial of benefits.

Thereafter, the Secretary sought rehearing en banc, challenging both the application of *Newsome* to that case and the cor-rectness of the *Newsome* decision itself. The Secretary's petition for en banc rehearing was granted on July 1, 1985. This petition was then consolidated with the petition in *Mullen* for purposes of briefing and oral argument.

### III.

A common characteristic of the separate appeals is our conclusion that the outcome depends upon who enjoys the benefit of the statutorily-mandated deference to findings of fact, for it appears that a judicial review limited by statute to the application of the substantial evidence standard could well support a finding either in favor of or against the claimant. It can therefore be seen that the basic difference in result between the decision of the ALJ and the decision of the Appeals Council when it rejects the findings of the ALJ will often depend upon what weight is attached to particular evidence in the record and upon what credibility is attached to the testimony of witnesses and to the other proof.

A split in the circuits[3] concerning the problems reflected by these appeals has been reflected by the decisions within our own court. In *Beavers v. Secretary of Health, Education & Welfare,* 577 F.2d 383 (6th Cir.1978), a panel of our court noted that "[i]t is beyond dispute that the Appeals Council, and the Secretary, have the *power* to conclude that testimony, even if uncontradicted in the record, is not credible, since the Secretary is entrusted with the duty of making all findings of fact." *Id.* at 386. (Emphasis in original). *See also McCann v. Califano,* 621 F.2d 829, 831–32 (6th Cir.1980). Although we concluded in *Beavers* that the Secretary's final decision was unsupported by substantial

---

**3.** The First, Fourth, Eighth, Tenth and Eleventh Circuits have rejected the *Newsome* standard and have held that, notwithstanding 20 C.F.R. § 404.970(a), the statutorily-mandated deference to findings of fact runs in favor of the Appeals Council even when it rejects an ALJ's favorable determination. *See Kellough v. Heckler,* 785 F.2d 1147 (4th Cir.1986); *Taylor v. Heckler,* 765 F.2d 872, 875 (9th Cir.1985); *Lopez-Cardona v. Heckler,* 747 F.2d 1081, 1083 (1st Cir.1984); *Baker v. Heckler,* 730 F.2d 1147, 1149–50 (8th Cir.1984); *White v. Schweiker,* 725 F.2d 91, 93–94 (10th Cir.1984). The Eleventh Circuit initially adopted the standard of *Newsome,* but then reversed itself in a unanimous *en banc* opinion, and adopted the standard that we adopt here. *Parker v. Bowen,* 788 F.2d 1512 (11th Cir.1986) (en banc), *rev'g, Parker v. Heckler,* 763 F.2d 1363 (11th Cir.1985). The Third and Seventh Circuits are contra. *See Powell v. Heckler,* 783 F.2d 396 (3d Cir.1986); *Scott v. Heckler,* 768 F.2d 172, 178 (7th Cir.1985).

evidence, we nevertheless emphasized that "[t]he Secretary has the ultimate responsibility for factual determinations." 577 F.2d at 387. *Beavers* thus recognized that because the Secretary is charged with the ultimate responsibility of administering the Act, "the statutorily-mandated deference to findings of fact runs in favor of the Secretary, not the administrative law judge...." *Id.* at 386. However, in *Newsome v. Secretary of Health and Human Services*, 753 F.2d at 44 (6th Cir.1985), another panel of our court believed that the Secretary had limited the power of the Appeals Council to review, and hence reverse, an ALJ's determination of disability to specified circumstances. Specifically, *Newsome* concluded that 20 C.F.R. § 404.970(a)(3)[4] "indicates that the Appeals Council may review a decision only if the decision is in fact unsupported by substantial evidence." *Id.* at 46. Therefore, according to *Newsome*, because the Secretary had limited the power of the Appeals Council to review an ALJ's factual decisions, the statutorily-mandated deference to findings of fact now ran in favor of those of the administrative law judge.

It is apparent that *Newsome's* interpretation of 20 C.F.R. § 404.970(a) imposes a significant limitation on the Secretary's au-

thority to review an ALJ's factual decision and thus threatens to undermine the Secretary's responsibility to administer the dispensation of benefits fairly and consistently. Indeed, in many cases the effect of *Newsome* will be to vest final decision-making authority in the ALJ rather than the Secretary. We believe, however, that such a result is fundamentally at odds with the statutory command that makes conclusive "the findings of the Secretary as to any fact, if supported by substantial evidence...." 42 U.S.C. § 405(g).

## A.

Initially, we note that there are good reasons in public policy and sound administration that caution against concluding too quickly that the Secretary has limited his power through the Appeals Council to review final determinations of an administrative law judge. The Department of Health and Human Services is unquestionably one of the largest quasi-judicial administrative agencies in the federal government, and it provides one of the most important sources of benefits to the aged and needy. The administrative law judge no doubt plays a significant role in the dispensation of these benefits.[5] As of 1975 there were twenty-

---

**4.** 20 C.F.R. § 404.970(a)(3) provides:
 (a) The Appeals Council will review a case if—
 &ast; &ast; &ast; &ast; &ast; &ast;
 (3) the action, findings or conclusions of the administrative law judge are not supported by substantial evidence....

**5.** The role of the administrative law judge under the Social Security Act, like that of the Appeals Council, is longstanding. Unlike the Appeals Council, however, the ALJ's position is not a creature of administrative law; rather, it is a direct creation of Congress under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.* Under the APA, ALJ's are also provided with a certain degree of "decisional independence" from the agency within which they operate. *Nash v. Califano*, 613 F.2d 10, 15 (2nd Cir.1980). Indeed, under § 11 of the APA, "Congress intended to make hearing examiners 'a special class of semi-independent subordinate hearing officers' by vesting control of their compensation, promotion and tenure in the Civil Service Commission to a much greater extent than in the case of other federal employees."

*Ramspeck v. Federal Trial Examiners Conference*, 345 U.S. 128, 132, 73 S.Ct. 570, 573, 97 L.Ed. 872 (1953). Moreover, although the position of an ALJ is not "constitutionally protected," 345 U.S. at 133, 73 S.Ct. at 573, it is, in many respects, "functionally comparable" to that of a federal district judge. *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978). Thus, under the Secretary's regulations, the ALJ serves as the initial fact finder and decision maker when an individual requests a hearing on his or her claim for benefits under Title II of the Act. *See* 20 C.F.R. §§ 404.900–.965 (1985). Moreover, the conduct of these hearings generally rests in the ALJ's sound discretion. *Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971).

In contrast to the Appeals Council, therefore, ALJ's in the SSA are functionally more independent of the agency within which they adjudicate social security claims. There are, however, definite limits on the extent to which ALJ's may exercise their decisional independence. Indeed, were it otherwise it might be difficult for the

five agencies with a total of 780 ALJ's of whom 438 were in the Social Security Administration. By 1980, there were 1,134 ALJ's in twenty-nine agencies and 670 of these were in the Social Security Administration.[6] These numbers reflect not only the importance of the ALJ's role, but perhaps more importantly the burgeoning caseload being experienced in the administration of the Social Security Act. At the same time, in specifically entrusting the Secretary with the responsibility of administering the Act the Congress necessarily imposed a duty to strive for consistency and uniformity in the dispensation of social security benefits. This policy is implicit in the statutory command that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Therefore, if the Secretary is to carry out this policy effectively, any purported limitation on the Secretary's authority to review disability determinations by so large a body of individual judges should not be lightly inferred.

We acknowledge that the Secretary may, like any other agency, limit his original discretion in a matter by appropriate rule or regulation.[7] Thus, under appropriate circumstances, one might very well conclude that, although an agency had the power to decide de novo all questions appealed from an ALJ, the agency has nevertheless limited the issues to be decided on appeal by rule or regulation.[8] According

---

agency to implement its policies or, in the case of the SSA, to administer benefits in a fair and consistent manner. Administrative law judges therefore remain entirely subject to the agency on matters of law and policy. *See Association of Administrative Law Judges, Inc. v. Heckler,* 594 F.Supp. 1132, 1141 (D.D.C.1984); *see also* Scalia, *The ALJ Fiasco-A Reprise,* 47 U.Chi.L. Rev. 57, 62 (1979). Moreover, an agency can always reverse an ALJ on matters of fact even when it disagrees with the ALJ's credibility determination. *See FCC v. Allentown Broadcasting Corp.,* 349 U.S. 358, 364–65, 75 S.Ct. 855, 859, 99 L.Ed. 1147 (1955); *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 492–97, 71 S.Ct. 456, 466–69, 95 L.Ed. 456 (1951). In reviewing an ALJ's decision, the agency also retains "all the powers which it would have in making the initial decision." 5 U.S.C. § 557(b). In addition, under both the APA and the Secretary's regulations, the agency itself, or the Appeals Council, may decide to assume the responsibility for conducting a hearing. 5 U.S.C. § 556(b); 20 C.F.R. § 404.956 (1985).

6. *See* 3 K. Davis, *Administrative Law Treatise* 317 (2d ed. 1980) and K. Davis, *Administrative Law of the Seventies* 27–28 (Supp.1980). According to the SSA's Office of Hearings and Appeals, as of January 1986, there were approximately 687 ALJ's involved in the administration of benefits under the Social Security Act.

7. 42 U.S.C. § 405(a) provides:
The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs in evidence and the method of taking and fur-

nishing the same in order to establish the right to benefits hereunder.

8. *See* section 557(b) of the Administrative Procedure Act, which provides in part:
When the presiding employee makes an initial decision, that decision then becomes the decision of the agency without further proceedings unless there is an appeal to, or review on motion of, the agency within time provided by rule. On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision *except as it may limit the issues on notice or by rule.*
5 U.S.C. § 557(b). (Emphasis added). Under this provision, Professor Davis notes "the agency has power to decide all questions de novo, but the agency may limit the issues it decides on notice or by rule. *Agencies usually do not so limit the issues they decide.*" 3 K. Davis, *Administrative Law Treatise* 90–93 (2d ed. 1980) (emphasis added). *See, e.g.,* 47 C.F.R. §§ 0.361, 1.276(b) (1985) (Regulations of F.C.C. which provide that the F.C.C.'s Review Board is authorized to perform all the review functions of the Commission and which further place no limitations on the Commission's review powers) (*discussed in* Freedman, *Review Boards in the Administrative Process,* 117 U.Pa.L.Rev. 546 (1969)); 16 C.F.R. § 3.54(a) (1986) (Regulations of FTC which state: "Upon appeal from or review of an initial decision, the Commission ... will, to the extent necessary or desirable, exercise all the powers which it could have exercised if it had made the initial decision."); 8 C.F.R. § 3.1(d) (1985) (Regulations of INS which provide that in reviewing the decisions of ALJ's, the Board of Immigration Appeals "shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate

to *Newsome*, this is precisely what the Secretary has done by promulgating 20 C.F.R. § 404.970(a). In *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1971), the Supreme Court found itself confronted with a similar question with respect to a purported limitation on the power of the National Labor Relations Board to review the findings of a hearing examiner. There, the Court replied:

> The Court of Appeals deemed itself bound by the Board's rejection of the examiner's findings because the court considered these findings not "as unassailable as a master's." 179 F.2d [749 (2d Cir.1950)] at 752. They are not. Section 10(c) of the Labor Management Relations Act provides that "If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact...." 61 Stat. 147, 29 U.S.C. (Supp. III) § 160 (c). The responsibility for decision thus placed on the Board is wholly inconsistent with the notion that it has power to reverse an examiner's findings only when they are "clearly erroneous." *Such a limitation would make so drastic a departure from prior administrative practice that explicitness would be*

*required* (Emphasis added). (Footnote omitted).

340 U.S. at 492, 71 S.Ct. at 466.

While *Universal Camera* may have been intended primarily to remove uncertainty in the scope of judicial review by the courts, the cited language makes it clear that within the agency, the ultimate responsibility for findings of fact rested with the National Labor Relations Board by statute, as we believe it rests with the Secretary of Health and Human Services here, and for the same reasons. Since we are likewise unable to find the kind of explicitness in the cited regulation, which is necessary to impose such a significant limitation on the Secretary's authority to review ALJ disability determinations, we must conclude that *Newsome* was wrongly decided.

### B.

In *Newsome*, a panel of our court initially concluded that unless one of the four grounds listed under 20 C.F.R. § 404.970(a) is present, "the Appeals Council has no authority to review the decision of the administrative law judge." 753 F.2d at 46.[9] In relevant part, section 404.970(a) states:

(a) The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

and necessary for the disposition of the case.") (*construed in Noverola-Bolaina v. INS*, 395 F.2d 131, 134–35 (9th Cir.1968)); 43 C.F.R. §§ 4.320, 4.340 (1985) (Regulations of the Secretary of Interior which provide that the Board of Indian Appeals "shall not be limited in its scope of review" in certain matters); 17 C.F.R. § 10.104 (1985) (Regulations of Commodity Futures Trading Commission which provide that, in reviewing ALJ decisions, the Commission may "make any findings or conclusions which in its judgment are proper based on the record in the proceeding").

Some agencies have limited their scope of review. When they have done so, however, they have been quite explicit. *See, e.g.*, 20 C.F.R. § 802.301 (1985) (Regulations of Secretary of Labor under the Longshoremens' and Harbor Workers' Compensation Act which state that the "Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it.")

9. In reaching this conclusion, the *Newsome* court relied on *Parris v. Heckler*, 733 F.2d 324, 325 (4th Cir.1984), where the Fourth Circuit stated: "the Appeals Council does not have unbridled discretion to overturn an ALJ's decision with which it disagrees, but may only do so if one of these four grounds is present." Characterizing this language as *dicta,* the Fourth Circuit subsequently held that, although 20 C.F.R. § 404.970(a) "may impose some judicially enforceable limits on Appeals Council own-motion review," there can be no question that "judicial review of a final decision of the Secretary which is at odds in its factual findings with that of an ALJ focuses upon the Secretary's decision rather than the ALJ's.... If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be supported." *Kellough v. Heckler*, 785 F.2d 1147 (4th Cir.1986); *see also Gross v. Heckler*, 785 F.2d 1163 (4th Cir.1986).

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest.

If one were to simply read the plain language of this provision, it is not at all clear that the Secretary has promulgated section 404.970(a) in order to limit the Appeals Council's authority to review an ALJ's decision. Indeed, it is only if one reads the quoted provision as stating that "the Appeals Council will review a case *only* if" one of the four circumstances is found to exist, that one can reach such a conclusion. Moreover, from a consideration of the four listed grounds of review under section 404.970(a), it would appear that the Secretary was concerned with ensuring consistency and uniformity in the decisions of numerous administrative law judges, rather than with mandating an exclusive set of criteria under which the Appeals Council would be permitted to review an ALJ's decision.

We also believe that an interpretation of section 404.970(a) which would limit the Appeals Council's authority to review ALJ decisions ignores the language of 20 C.F.R. § 404.969. This section states:

Anytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council itself *may decide to review the action that was taken.* If the Appeals Council does review the hearing decision or dismissal, notice of the action will be mailed to all parties at their last known address. (Emphasis added).

On its face, this provision would seem to permit the Appeals Council to review on its own motion *any* action that was taken by an ALJ. Certainly there is nothing in this provision that suggests any limitation on the Appeals Council's power of own motion review. In our view, therefore, the most natural and common sense reading of section 404.969 in conjunction with section 404.970(a) is that the Appeals Council may review any ALJ decision on its own motion

and for any reason, if it deems it necessary, except that the Appeals Council *must* review a decision if it appears that the ALJ has committed one of the four transgressions listed under section 404.970(a). Stated differently, section 404.970(a) is designed to ensure that the Appeals Council reviews certain kinds of cases which the Council might otherwise decide not to review. In this sense, therefore, one could say that section 404.970(a) does limit the Appeals Council's discretion in that the Appeals Council does not have the unrestrained power to decide what *not* to review. This interpretation certainly comports with the plain language of these provisions and is consistent with a broad policy objective that encourages consistency and uniformity in the administration of benefits under the Act.

The foregoing interpretation of sections 404.969 and 404.970(a) finds further support in the regulatory history of those provisions. It is well established that "the weight of an administrative interpretation will depend, among other things, upon 'its consistency with earlier and later pronouncements' of an agency." *Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974) (quoting *Skidmore v. Swift and Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). Indeed, when an agency's interpretation of a regulation is consistent and long standing, the court is obliged to give great deference to that interpretation. *See E.I. DuPont de Nemours Co. v. Collins,* 432 U.S. 46, 54–55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977); *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971).

From February 26, 1960, to November 23, 1976, Appeals Council review of ALJ decisions was governed by 20 C.F.R. § 404.947 (1976), which was the predecessor of 20 C.F.R. § 404.969. Section 404.947 provided:

The Appeals Council may dismiss (see § 404.952) or, *in its discretion,* deny or grant a party's request for review of a presiding officer's decision, or may, on

its own motion, within 60 days after the date of the notice of such decision, reopen such decision for review or for the purpose of dismissing the party's request for hearing for any reason for which it could have been dismissed by the presiding officer (see §§ 404.935 though 494.-937). Notice of the action by the Appeals Council shall be mailed to the party at his last known address. (Emphasis added).

During the period that this provision was in effect, there was no predecessor regulation to 20 C.F.R. § 404.970(a). As a result, there could be ·no distinction between de novo or limited review of ALJ decisions. Section 404.947 simply provided the Appeals Council with the authority to review, in its discretion, *any* ALJ decision and apparently for any reason.[10]

In 1976, the Secretary added a new section, 20 C.F.R. § 404.947(a), which was the predecessor of section 404.970(a). *See* 41 Fed.Reg. 51585, 51588 (1976). Section 404.-947(a) provided:

§ 404.947(a) Basis for review of the presiding officer's decision or dismissal by Appeals Council.

(a) The Appeals Council, on its own motion or on request for review, will review a hearing decision or dismissal where:

(1) There appears to be an abuse of discretion by the presiding officer;

(2) There is an error of law;

(3) The presiding officer's action, findings, or conclusions are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue which may affect the general public interest.

At the time this provision became effective and during the period that it remained in effect, section 404.947 was left unchanged. Since section 404.947 already gave the Appeals Council the authority in its discretion to review (or not to review) any ALJ decision, a common sense interpretation of section 404.947(a) would indicate that this section was intended to specify those decisions which the Appeals Council would be required to review. Otherwise, if section 404.947(a) had been intended to limit the Appeals Council's review authority, a conflict would have resulted between the two provisions, thus necessitating a repeal of section 404.947.

In 1980, sections 404.947 and 404.947(a) were recodified at 20 C.F.R. §§ 404.969 and 404.970(a). *See* 45 Fed.Reg. 52078, 52088 (1980). There is nothing in the preamble to indicate that this recodification was intended to effect any substantive change in these regulations.

Most recently, the Secretary issued Social Security Ruling 82–13,[11] implementing the Bellmon Amendment which directs the Secretary to institute a program for the Appeals Council to review ALJ decisions on its own motion.[12] Significantly, SSR 82–13 notes that the Bellmon Amendment is

---

**10.** According to the Tenth Circuit, 20 C.F.R. § 404.947 "gave the Appeals Council full power to substitute its judgment for that of the ALJ, with or without further proceedings." *White v. Schweiker,* 725 F.2d 91, 93 (10th Cir.1984). Commenting upon this section the court further noted that, "[t]he courts have accepted the proposition that an agency hearing officer's authority to render initial decisions does not relegate the reviewing counsel within the agency to the role of an appellate court." *Id.* at 94 (citing with approval *Beavers v. Secretary of Health, Education & Welfare,* 577 F.2d 383, 386 (6th Cir.1978)).

**11.** Program for Ongoing Review of Hearing Decisions Pursuant to Section 304(g) of Public Law (P.L.) 96–265 Appeals Council's Review Authority, SSR 82–13 (1982).

**12.** The Bellmon Amendment states: "The Secretary ... shall implement a program of reviewing, on his own motion, decisions rendered by administrative law judges as a result of hearings under section 221(d) of the Social Security Act...." The Bellmon Amendment was enacted into law on June 9, 1980. Pub.L. No. 96–265, § 304(g), 94 Stat. 441 (1980). Certain aspects of the "Bellmon Review Program" were subsequently challenged by the Association of Administrative Law Judges. *See Association of Administrative Law Judges, Inc. v. Heckler,* 594 F.Supp. 1132 (D.D.C.1984).

the result of Congressional concern about what is considered a high overall percentage of claims for disability benefits allowed at the hearing level and the wide variance in allowance rates among individual administrative law judges. It also reflects Congressional intent that there should be a review program that incorporates the same adjudicative principles that bind the administrative law judges and provides for uniformity of decisionmaking at all adjudicatory levels.[13]

Although SSR 82–13 notes that the Appeals Council's ongoing review "will be implemented primarily on the basis of the categories" listed under section 404.970(a), the ruling also emphasizes that section 404.969 "provide[s] the Appeals Council the discretionary authority to review any decision or dismissal action for any reason. *This is not a newly acquired authority but has existed for many years.*" (Emphasis added).

▮ In light of this regulatory history and administrative interpretation of section 404.969, we believe that section 404.970(a) was not intended to limit the Appeals Council's discretionary own motion review of ALJ decisions. Rather, we find ourselves in agreement with the Eighth Circuit and conclude that section 404.970(a) "merely sets out those categories of cases which the Appeals Council '*will* review.'" *Baker v. Heckler,* 730 F.2d 1147, 1149 (8th Cir. 1984). We also believe that this interpretation is reasonable and consistent with the language of the regulations and the purposes of the statute and is therefore entitled to deference.

### C.

▮ From what has been said, it necessarily follows that our review, and review by the district courts, is to be governed by the substantial evidence standard in terms of the Secretary's final decision as expressed by the final action of the Appeals Council. This is so because the statute, by its terms, makes conclusive "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, ...." As Circuit Judge Richard S. Arnold succinctly noted in *Baker, supra:*

> The Secretary has chosen to act through the Appeals Council, and therefore it is the Council's decision that must be deferred to by the courts if substantial evidence exists to support it, whatever the result might have been if the courts were reviewing the ALJ's decision directly. The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision. (Citations omitted).

730 F.2d at 1150.

We recognize that the foregoing language does not require a reviewing district or circuit court to follow the Appeals Council's decision blindly. As we stated in *Beavers, supra,* "this court still has the responsibility of determining whether there is substantial evidence to support the Appeals Council's decision, and when the administrative law judge has concluded that a witness' testimony is credible, that is an important factor to consider." 577 F.2d at 386–87. Indeed, "[t]he opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly." *Id.* at 387. Any judicial determination of whether the Appeals Council's decision is supported by substantial evidence must necessarily take into consideration "the record as a whole," including "whatever in the record fairly detracts

---

13. *See also* H.R.Rep. No. 944, 96th Cong., 2d Sess. 57, *reprinted in* 1980 U.S. Code Cong. & Ad. News 1392, 1405; S.Rep. No 408, 96th Cong., 2d Sess. 53, *reprinted in* 1980 U.S. Code Cong. & Ad. News 1277, 1331.

from its weight." *Universal Camera Corp.*, 340 U.S. at 488, 71 S.Ct. at 464. This is not to suggest, however, that the Appeals Council must offer any special justification for its contrary findings other than that which has always been required in this kind of proceedings. The point is simply this: the issue for judicial review is whether the Appeals Council's findings, and not those of the administrative law judge, are supported by substantial evidence when those findings conflict.

## IV.

Having resolved the issues which brought about review, it is still necessary to address the merits of the claim of each of the plaintiffs in the light of their individual facts.

### Appeal No. 84–1455: Luther Mullen

Luther D. Mullen was born August 22, 1929, and ceased working on his fiftieth birthday, August 22, 1979. On June 22, 1981, he applied for disability benefits retroactive to the date of his retirement.

Mullen was described as moderately obese weighing 205 to 250 pounds and being approximately 6'1" tall. Mullen had only achieved a fourth grade education and admitted to very limited reading capabilities. He was described as pleasant, fairly healthy in appearance although at the same time appearing to some as older than his actual age. He had worked for at least nineteen years as a foundry laborer and had been engaged in a wide variety of activities as such, all of which were classified as heavy labor. The record does not reflect that Mullen was ever married, and he had lived for many years in a private home of friends sharing expenses and some responsibilities for its upkeep. He has a car and drives some, but basically appears to live a quiet and sedentary life.

In a one page opinion, the administrative law judge awarded Mullen benefits, finding that he was suffering from two severe impairments, esophagitis and spondylolisthesis at L5, conditions which the ALJ characterized as not extremely serious but "serious enough to impose substantial limitations on claimant's ability to work." Relying on the opinion of Lars Anderson, D.O., one of Mullen's treating physicians, the ALJ discounted that doctor's certification of his total inability to work but nonetheless concluded that his maximum sustained work capacity was limited to sedentary employment. In the light of Mullen's closely approaching advanced age, his limited education and his history of unskilled work, the ALJ held that a finding of total disability was dictated by Rule 201.01 of Table 1 to Appendix 2 of Subpart P to Regulation No. 4.

The Appeals Council, in an "own motion" review, considered all of the evidence which was before the administrative law judge, as well as two additional medical reports from James M. Bullock, M.D., which had been submitted by claimant's representative after review was ordered. In contrast to the administrative law judge's one page opinion, the Appeals Council devoted five full pages to an in-depth study of the evidence and made eleven express findings, the conclusion of which was that, while claimant did suffer the same impairments as were noted by the administrative law judge, his allegations of pain and significant functional restrictions to the extent of an inability to perform at least light work were not credible. While finding that Mullen was unable to perform his past relevant work as a foundry worker, the Appeals Council concluded from the evidence that Mullen still retained the "residual functional capacity" for at least light work as defined in section 404.1567, 20 C.F.R. § 404.1567 (1985). It agreed that at fifty-three years of age, claimant was closely approaching advanced age and recognized that he had a marginal education.

The point of difference, therefore, appears to be focused on an evaluation of Mullen's complaints of pain and upon the Council's express finding that the evidence concerning their severity was not credible. The Council considered but rejected Dr. Anderson's opinion that Mullen's back pain was supported by objective evidence and found it inconsistent with other medical

opinions of record. Its specific review of the record is repeated verbatim:

Sections 404.1528 and 404.1529 of Social Security Administration Regulations No. 4, as pertinent herein, clearly provide that an individual will not be found disabled based on symptoms, including pain, unless medical signs or findings show that there is a medical condition that could reasonably be expected to produce those symptoms. In this case, there is little doubt that the claimant does experience some pain; however, the record does not establish that the claimant's pain is constantly severe, unremitting and unreponsive to treatment. It is note worthy [sic] that the claimant sees his physician only once a month and essentially receives only renewals of his prescriptions. He is apparently not interested in undergoing further definitive treatment for his back problems. It is also note worthy [sic] that the claimant has little motivation to undergo such treatment since he is receiving a retirement pension and workmen's compensation benefits. The record shows that the claimant is able to take care of his needs, drive his car, do his own grocery shopping and participate in his hobby. The medical evidence shows that he does have spondylolisthesis at L5 as well as degenerative arthritis and osteoarthritis. Those impairments are certainly capable of producing pain. However, the X-ray films show that there has been little change in the claimant's back condition since 1977. Moreover, Dr. Wessinger released the claimant to return to work in May 1980 with limitations only with respect to lifting over 35 pounds or excessive bending. Dr. Anderson has stated that the claimant is unable to work due to his back pain but his opinion is apparently based on the claimant's symptoms rather than objective evidence. Dr. Bullock stated that the claimant could do sedentary work but might have difficulty performing light work without some pain and discomfort. However, Dr. Bullock also stated that the claimant's reported symptomatology is greater than what he would normally expect for someone with his condition. After careful consideration of all those factors, the Appeals Council is of the opinion that the claimant's testimony regarding the frequency, severity and duration of pain and the limitations caused by such pain is not credible. The Appeals Council believes that the claimant does experience mild to moderate pain and perhaps even occasional severe pain as a result of his back condition and his esophagitis. The Appeals Council believes that the claimant's impairments prevent him from performing his usual heavy work in the cleaning department at a foundry. However, the Appeals Council is of the opinion that the claimant, in spite of his pain, has the maximum sustained capacity to perform light work with no excessive bending. The medical record does not reveal the existence of neurological deficits that would prevent the claimant from walking and Dr. Wessinger released him to return to work in May 1980. Dr. Bullock stated that the claimant might have difficulty performing light work due to pain and discomfort but he provided no reason, from an objective standpoint, why the claimant would be unable to perform light work. The Appeals Council believes that the claimant's pain is intermittent and responds adequately to the medications prescribed for him.

The foregoing findings are supported by our own examination of the record. The record further shows that Mullen quit work precisely on his fiftieth birthday when he was entitled to retirement benefits on the basis of nineteen years employment with the company. This, with the $164 per week he is receiving in workmen's compensation, and the limited nature of his lifestyle, he being single and living in a home with friends, may have left him with little incentive to return to work. In addition to the inconsistencies pointed out in the cited findings of the Council, the medical evidence itself, while consistently showing the existence of the spondylolisthesis at L5, at the same time shows a consistent absence of

many of the findings in connection with neurological examinations which normally occasion complaints of severe pain. There was no muscle spasm or atrophy evident nor reflex abnormality nor loss of sensation, as found by Dr. Gilbert and also by Dr. Anderson and by Dr. Bullock. Dr. Bullock had difficulty reconciling inconsistent complaints with the condition found. While it was appropriate to consider the complaints arising from both the spondylolisthesis and the esophagitis, it is apparent that the Council did not consider the latter condition to be a severe impairment at all. Substantial evidence clearly supports this finding. The evidence was that, while Mullen suffered from this condition, at the same time the condition has responded very well to treatment. As Chief United States District Judge Wendell A. Miles observed in his district court opinion upholding the Appeals Council's denial of benefits, while Mullen experienced difficulty in 1979 which occasioned his hospitalization, his recovery was dramatic and with treatment he was completely relieved of any symptomology within three days. Dr. R. Martins, M.D., who treated him for this condition concluded that it was fairly well managed at that time and since that time his treating physician, A.J. DeVore, D.O., reported in July of 1981, that Mullen had not been given any treatment except for an occasional prescription for medication. As Chief Judge Miles observed, the condition was one with which he had been afflicted for many years and which he had in the past managed to tolerate notwithstanding his work. Chief Judge Miles also noted, as did the Appeals Council, that Dr. Anderson's final conclusion that Mullen had been disabled, had not been earlier supported by specific findings and was contradicted by the analysis of Dr. Wessinger and, finally, Dr. Bullock.

 In conclusion, we hold that substantial evidence supports the findings of the Appeals Council. We do not consider our opinion in this regard at odds with the original panel view which limited its review to the opinion of the administrative law judge and found that that was supported by substantial evidence. It would appear to us that this was a rather classic case in which the different applications of the two rules bring different results and also that it may well be the type of case in which, as Judge Arnold observed in *Baker v. Heckler, supra,* the statutory scheme "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." [14]

---

14. Although agreeing with our "general analysis of the statutory and regulatory provisions governing the Appeals Council's standard of review," Judge Merritt, in his dissenting opinion, nevertheless disagrees with the application of this analysis to the facts of *Mullen.* According to Judge Merritt, "[t]he Appeals Council set out for itself in this case a 'substantial evidence' standard of review, and it should be held to that standard in this case even though it could have employed the broader standard described in Judge Engel's opinion." *Post,* at 557, citing *S.E.C. v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). In Judge Merritt's view, therefore, since the Appeals Council purported to apply the "substantial evidence" standard to this particular case when it decided to review the ALJ's decision on its own motion, the ALJ's decision must be upheld if it is in fact supported by substantial evidence.

This conclusion follows, however, only if one accepts the proposition that the four categories listed under 20 C.F.R. § 404.970(a), including the "substantial evidence" category, operate as a constraint on the Appeals Council's power of own motion review. As we have explained, however, and as Judge Merritt apparently agrees, these categories simply prescribe those situations in which the Appeals Council *will* initiate review; that is, these categories are designed to ensure that certain kinds of decisions are reviewed. Once review is initiated, however, we do not think that there is anything in the regulations or in the principles announced in the *Chenery* decisions which preclude the Appeals Council from reaching an independent decision. Stated differently, the issue of what is sufficient to trigger review and the issue of scope of review once such review is triggered are two entirely different questions.

Finally, we believe that Judge Arnold's comments in *Baker,* 730 F.2d at 1150, reveal the practical difficulties with the dissent's approach:

[It] overlooks the fact that the decision by the Appeals Council to single out a given case for own-motion review necessarily occurs at the beginning of the Appeals Council process. The Council may believe, for example, that the case fits one of the four categories listed in the regulation, but it may turn out, after

### Appeal No. 84–5352: Richard Shepherd

Richard G. Shepherd was born February 14, 1942, and ceased working shortly after he injured his back while lifting a barrel at work on January 14, 1974. He first applied for Social Security disability insurance benefits on August 30, 1974, alleging total disability because of a ruptured disc and pinched nerve. The tortured procedural history of his exceptionally prolonged litigation is spelled out in the reported decision of the original panel of our court to which this appeal was assigned. *See Shepherd v. Secretary*, 758 F.2d 196 (6th Cir. 1985).

Shepherd was described as weighing between 184 and 200 pounds and as approximately 6'1½" tall. He is married and has one child. His wife works. Shepherd was first hospitalized at the University Hospital of the University of Kentucky from March 16 to March 23, 1974, after having been referred by Dr. Milo Schosser of the Lynch Medical Services in Lynch, Kentucky. While there, he was attended by Alfred B. Young, M.D., a neurosurgeon. Dr. Young's extensive reports cover perhaps the most thorough record of Shepherd's extensive medical history and will be described in some detail later. Suffice it to say, however, that the administrative record here contains the reports of the following physicians and other specialists:

Milo Schosser, M.D.;

M. Frank Turney, M.D., a neurosurgeon;

Curwood R. Hunter, M.D., a neurosurgeon;

K. Armand Fischer, M.D., an orthopaedic surgeon;

William H. Brooks, M.D., a neurosurgeon;

William C. Madauss, M.D., a resident in neurosurgery;

A. Julian Ahler, M.D., a radiologist;

Kerwin A. Fischer, M.D., an orthopaedic surgeon;

Carol Flynn, M.A., a clinical psychologist;

Ralph J. Angelucci, M.D., a neurosurgeon;

W.R. Dill, M.D., a psychiatrist.

Of the foregoing, Drs. Young, Ahler, Schosser, and Turney were either attending physicians or involved in Shepherd's care as a patient. The other witnesses were primarily engaged for the purposes of reporting in connection with the Kentucky workmen's compensation claim or with the Social Security claim, or both. Dr. Hunter, Dr. Fischer, Dr. Fischer, and Dr. Brooks examined and made reports either written or by deposition on behalf of Shepherd. Rita Dixon was employed by the State of Kentucky and testified concerning availability of employment on behalf of Shepherd. Clinical psychologist Carol Flynn, Dr. Angelucci, and Dr. Dill were all engaged and called by the Social Security Administration in connection with the development of additional information in the two remands which took place. It would be difficult to find a record in which there is a wider and stronger difference of opinion concerning Shepherd's condition. We conclude that this difference exists not because of the particular time at which the examination or report was given, but because of a fundamental difference in evaluation of the medical evidence and of the symptomatology as reported by Shepherd, and as well in an assessment of his credibility and of the extent of his pain.

The most extensive testimony and the most continuing supervision of Shepherd's case came from Dr. Young to whom Shepherd was first referred for treatment at the time of his original hospitalization in March 1974. Dr. Young's initial although tentative diagnosis was that Shepherd was suffering from a suspected herniated nucleus pulposus, L–5–7–1. However, in the course

full examination, that this initial impression was mistaken. We do not believe that the Council is then required to abandon its own review and to allow the ALJ's decision to stand, even when it has a definite and firm conviction that the ALJ was mistaken. The

question of power to review, must, as a practical matter, be addressed and decided at a preliminary stage, not after the review is completed, at a time when a negative answer to the question would render the whole review process nugatory.

of his continuing supervision and observation of Shepherd, Dr. Young, while convinced that Shepherd did indeed suffer from what he finally diagnosed as mechanical back pain, concluded in 1975 that there was not any objective evidence of nerve injury and that all of the tests and examinations at that time were within normal limits. At the same time, he counseled Shepherd against extensive lifting, bending, crawling and stooping and believed that he was "unable to engage in arduous labor." In the meantime, Shepherd had also been referred for further examination to Dr. M.F. Turney who gave him an extensive physical examination in August and September of 1974, during the course of a further hospitalization. While Turney originally believed that Shepherd might have lumbar spinal nerve compression lesions, he found the X-rays to be normal as far as he could tell with no asymmetry and all modalities of sensation were also found to be normal. Shepherd walked normally and had a free range of back motions and, finally, on September 23, 1974, Dr. Turney reported to Dr. Wier of the Lynch Medical Services, who was apparently Shepherd's regular doctor in his home town, that:

> On examination when not specifically tested, the patient had free range of back motion. The reflexes were present, equal, and active. There was no swelling or tenderness of his right knee. In fact the neurological examination was normal.
>
> This patient's symptomatology now does not fit into any spinal nerve compression lesion with which I am familiar.
>
> Maybe he needs to be worked up to see whether he has arthritis or some such thing as that. I certainly cannot recognize any neurosurgical lesion on him at this time.

In an earlier letter to Dr. Wier on August 23, 1974, Dr. Turney noted considerable skepticism concerning the symptomatic history which Shepherd was relating. He commented:

> On examination he [Shepherd] had so much functional overlay that it was diffi-cult to evaluate the patient. He had varying degrees of limitation of back motion. On standing, he could barely move his back. However, when sitting on the examining table, he had an extreme arch in a leaning over position.

Dr. Turney then commented further:

> This patient may have a lumbar spinal nerve compression lesion, but he has developed considerable iatrogenic difficulty and a severe functional overlay as indicated by his statements or interpretations of what doctors have told him above.

Dr. Turney of course later concluded that there was no neurosurgical lesion indicated.

In his report following further hospitalization at University Hospital in July, 1974, Dr. Young noted that "the patient had a MMPI [Minnesota Multiphasic Personality Inventory] performed which concluded that the patient was more likely a hysterical personality." This finding and similar findings were to be generally reflected throughout the record thereafter as indicating that, consciously or unconsciously, Shepherd was consistently exaggerating both his symptoms and the pain he believed he suffered from them.

With respect to the other neurological evidence, it is fair to say that there is a very wide spread of opinion among the several neurosurgeons who examined Shepherd whether for treatment or for testimony. Dr. Turney obviously shared some of the skepticism of Dr. Young concerning the medical basis for Shepherd's back problem. Drs. Hunter, Fischer and Brooks, all of whom examined Shepherd for the purpose of testifying on his behalf at the several hearings, tended to one degree or another to support a medical basis for the claim although Dr. Brooks did find an absence of any arthritis or degenerative disc disease. Those doctors did find limitation in the motion of the left leg, tenderness in the area of the lumbar spine, and concluded that Shepherd was totally disabled, although Dr. Fischer opined that it was a "100% temporary partial disability." Much

of the cross-examination of those doctors went to the rather persistent absence of any positive findings of negative tendon reflexes, a test which all agreed would be probably the least subject to subjective manipulation on the part of the patient. Dr. Young, meanwhile, continued to adhere to his final conclusion that, neurologically, Shepherd had no scoliosis, no motor or sensory deficit, and no equal and bilateral tendon reflexes. "We felt that the patient's symptoms, the normal cystometrogram and the normal electromyelogram pretty well ruled out a diagnosis of a disc problem and there was no indication for myelography or need for surgery." Dr. Young discharged Shepherd on January 14, 1975, without prescribing any medication or recommending any further appointments.

Subsequently, a neurosurgeon engaged by the Social Security Administration, R.J. Angelucci, who was engaged solely for the purpose of reporting, reported on March 23, 1978, in a very caustic manner, that Shepherd was "a tall, well developed and nourished, moaning and groaning, thirty-six year old white male." He found all signs, including X-rays, were entirely normal. Dr. Angelucci concluded his report with the comment, "This man had a normal neurological examination. Because of that I see no reason to complete the attached physical capacities evaluation since I see no disability present on this patient for return to work."

As noted earlier in the published opinion of the original panel, the United States district judge who heard Shepherd's appeal from the initial denial of benefits by the Secretary remanded the case because he concluded he could not determine whether there was substantial evidence to support a denial of benefits. The district court, in an order dated April 27, 1977, instructed that vocational evidence be produced including a psychological evaluation. On remand to the ALJ, the testimony of a vocational expert was taken, a psychological evaluation was completed and the medical reports were again evaluated. The ALJ found the claimant to be disabled, but the Appeals Council on its own motion remanded again

to the ALJ with instructions to gather more information, including a psychiatric evaluation. This remand produced the evaluation by Dr. Dill. Once again the ALJ found Shepherd to be disabled. This time, however, the Appeals Council refused to accept the ALJ's conclusion and denied benefits. In doing so it pointed to the discrepancy between the medical report of Dr. Dill and the evaluation sheet which he filled out to accompany it. This court found, however, that:

> [T]he Appeals Council failed to articulate the basis for adopting the favorable part of Dr. Dill's assessment of plaintiff's condition and rejecting the unfavorable part. Such an articulation is required here in order to find substantial evidence to support the Secretary's determination. If the Appeals Council rejected disability benefits because it believed plaintiff lacked credibility, once again it must indicate the reasons for coming to that conclusion.... Consequently, we must remand this case for further findings specifically on plaintiff's alleged mental impairments and credibility.

See *Richard G. Shepherd v. Secretary*, 698 F.2d 1223 (6th Cir.1982) (*quoted in Shepherd*, 758 F.2d at 197).

On remand, the disagreement between the ALJ and the Appeals Council was, if anything, even more marked than upon the previous remand. The administrative law judge's display of some petulance was at least understandable, for the Council remanded the case in turn to him without original comment and without itself making comments on Shepherd's "alleged mental impairments and credibility." The administrative law judge observed, quite correctly, that this was a finding that he was not empowered to make on behalf of the Council which would have to speak for itself. At the same time, he reaffirmed the findings of the earlier administrative law judge stating:

> [T]he great preponderance of the evidence is that the claimant's impairments are disabling and there is no substantial evidence in the record supporting a find-

ing that the claimant is able to perform substantial gainful activity. After all, by long-established judicial fiat, the Act is to be liberally construed in favor of a claimant and all doubt resolved in his favor except where substantial evidence might exist to the contrary.... The claimant was last insured in 1978, so it would be of no value to have him examined again or to hear further testimony. This matter has gone on long enough, administrative proceedings must come to an end within a reasonable time or else gross inequity is done.

The ALJ then found by a preponderance of the evidence that the claimant was insured, that the medically documented and orally proven physical and mental impairments were severe and significantly limited claimant's ability to perform some basic work-related functions. He further held that these impairments have been severe since 1974 and that claimant did not have the residual functional capacity to perform physical and mental demands of past relevant work. He further found that:

[T]he claimant does have an impairment restricting his ability to relate with co-workers and withstand the customary work pressures.

Considering age, work experience, education and impairment, the claimant cannot engage in other kinds of substantial gainful work which exists in the national economy in significant numbers because the claimant cannot perform the requirements of engaging in sedentary or light work (see exhibits for the regulatory definition of the exertional requirements for various levels of work). The nonexertional impairments of the claimant limit the ability to perform these requirements.

Thereafter, the Appeals Council filed what was to be its final ruling in a decision dated September 20, 1982. The original panel in this appeal described the latest Appeals Council decision as follows:

The Appeals Council again refused to adopt the ALJ's recommendation and denied benefits. The Appeals Council re-

lied heavily on the fact that Shepherd's claim of disability exceeds what the Council interpreted as the medically determinable levels of severity. The Appeals Council further stated specifically that claimant's sincerity with respect to his physical difficulties as he perceives them." The Council dismissed Shepherd's sincere claims regarding his physical limitations and stated that "much of the claimant's inactivity results from his own conviction that he cannot work." Finally, in order to comply with the Sixth Circuit's mandate concerning the Secretary's use of Dr. Dill's report, the Appeals Council explained why it relied on only the unfavorable part of the psychiatric evaluation by stating that the psychiatric evaluation was internally inconsistent. The District Court affirmed the Secretary's denial, and this appeal ensued.

758 F.2d at 197.

■ The original panel, believing that it was not entitled to evaluate whether the Appeals Council's decision was itself based upon substantial evidence, awarded benefits on the basis that the record did at least clearly reflect substantial evidence for the decisions of the administrative law judge. We are therefore left to determine whether, as in *Mullen*, this was the type of case in which substantial evidence could have supported either conclusion and, if so, whether our rejection of *Newsome* requires us to uphold the decision of the Appeals Council. We conclude that substantial evidence does exist to support the Council's decision.

While the administrative law judge seemed to believe that the overwhelming weight of evidence supported a medical and physical impairment entirely apart from any mental or psychological condition, we can only observe from the evidence which we have reviewed, that there is substantial evidence in support of each view. The medical analysis of the Appeals Council noted that the administrative law judge had concluded that Shepherd's testimony "had been consistent and was, therefore, credi-

ble. In this regard, the Appeals Council emphatically does not question the claimant's sincerity with respect to his physical difficulties as he perceives them. However, the medical evidence does not contain findings supportive of the degree of severity that the claimant contends. Therefore, the Appeals Council is not persuaded that the claimant's impairments restrict his work-related capabilities to the extent alleged." In this respect, the record provides substantial evidence for this determination by the Appeals Council, which then continued:

> To the contrary, the record shows that much of the claimant's inactivity results from his own conviction that he cannot work. This is supported by a depositon from A. Byron Young, M.D., a Board Certified neurosurgeon who examined and treated the claimant in 1974 (Exhibit 23). Similarly, a psychological evaluation in July 1977, indicated that there was no suggestion of neurological impairment, and that the claimant had a tendency to over react [sic] to minor physical dysfunction. He had excessive bodily concern and resisted any intepretation that his symptoms may have an emotional basis. The psychologist noted that the claimant stated he enjoyed people and did not have any interpersonal difficulties (Exhibit 26).
>
> In order to more accurately assess the claimant's mental state, a consultative psychiatric examination was performed by W.R. Dill, M.D. on April 9, 1978, and his report has been specifically mentioned by the court. On mental status examination, Dr. Dill noted that the claimant appeared to be depressed; however, he denied feelings of worthlessness, but did admit to worrying about the the [sic] future. The claimant was spontaneously productive of relevant material and his main theme of thought was his injury; however, there were no psychotic trends noted. The claimant denied compulsions, obsessions, or phobias, and was well oriented as to time, place, and person. His memory was good for both recent and remote events, and his judg-

ment was considered to be good. The psychiatric diagnosis was "Hysterical Neurosis, conversion type with Anxiety and Psychophysiological Symptoms in a person with a Passive Dependent Personality." On a supplemental questionaire, Dr. Dill estimated the degree of impairment of the claimant's ability to perform certain functions. Of particular relevance herein, Dr. Dill indicated that there was no impairment of the claimant's ability to relate to other people; however, there was a moderately severe limitation in his ability to perform work requiring frequent or minimal contact with others. The Appeals Council recognized this inconsistency and addressed it in the decision dated January 8, 1979. However, the court has directed that a more comprehensive rationale be given in resolving this inconsistency.

The reason for Dr. Dill's assessment that the claimant would be limited in his ability to work with others is not stated nor is it apparent from his report. To the contrary, this assessment is inconsistent with the rest of Dr. Dill's report and particularly his assessment that there was no impairment of the claimant's ability to relate to other people. Moreover, the assessment in question is inconsistent with other evidence of record including the psychologist's report in July 1977 which indicated that the claimant enjoyed people and had no interpersonal difficulties. Dr. Dill's assessment that there was no limitation on the claimant's ability to comprehend and follow instructions and only mild limitation in performing simple tasks is consistent with his narrative report and the other evidence of record including the psychological report referred to above. The overall medical findings, together with the fact that the claimant had no psychotic trends and was well oriented with good memory and good judgment, demonstrate that the claimant does not have a severe psychiatric impairment. In view of the above facts, the Appeals Council rejects Dr. Dill's assessment that the claimant

would be limited to a moderately severe degree in his ability to work with others. The evidence relative to the claimant's back impairment has been fully evaluated in the previous decisions. Briefly stated, the claimant's attending physician indicated that based on his symptoms, normal cystometrogram and normal electromyogram [sic], a disc problem was pretty well ruled out. Moreover, his back injury responded to symptomatic therapy during his hospitalization.

On the basis of the entire record as summarized in the previous decisions and supplemented herein, the Appeals Council finds that the claimant had the residual functional capacity to engage in work at a sedentary exertional level, and that his psychiatric impairment did not diminish his capability for a full range of sedentary work at any time on or prior to December 31, 1978, when he last met the special earnings requirments for disability purposes. The Appeals Council further finds that the claimant is a younger individual (currently 40 years of age) with a high school education, and that the issue of transferability of skills is not material herein. Accordingly, Rule 201.-27 of Table No. 1 in Appendix 2 of the regulations directs the conclusion that the claimant is not disabled. Therefore, the Appeals Council does not adopt the recommended decision dated May 28, 1982.

We have carefully reviewed the entire record and believe that, while the problem of analysis is difficult and frustrating, the Appeals Council has now properly fulfilled the directions contained in the earlier remand from our court, and with considerably more detail than was contained in the report of the administrative law judge. Under our ruling the decision of the Appeals Council is by law the decision of the Secretary and that decision is conclusive if supported by substantial evidence. The decision of the Appeals Council is so supported and it therefore is not our function or the function of the judicial branch of the government to interpose an independent or contrary view.

**V.**

In conclusion, we hold that the statutorily mandated deference to findings of fact under section 205(g), 42 U.S.C. § 405(g), runs in favor of the Appeals Council even though its findings may conflict with those of the ALJ. We believe this conclusion is compelled by the recognition that the Appeals Council has long been delegated the authority to act on behalf of the Secretary so that final action by the Council becomes the Secretary's final decision for purposes of judicial review. We further hold that because the Secretary had not limited the Appeals Council's power to review favorable ALJ disability determinations, at least with the kind of explicitness we think is necessary here, *Newsome v. Secretary of Health and Human Services* was wrongly decided and is hereby overruled. Accordingly, because we conclude that the decision of the Appeals Council is supported by substantial evidence in each of the individual cases, the judgment of the district court in each appeal is AFFIRMED.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment of the court and in Judge Engel's comprehensive explication of that judgment. My purpose in writing separately is to add a sort of perambulatory footnote prompted mainly by Judge Martin's dissent.

The question posed by Judge Martin—and it is a fair question, obviously—is whether the plain language of the 1976 amendments to the regulations did not introduce a significant limitation on the power of the Secretary to review ALJ decisions. I agree with the court's answer to that question. Given what the regulations said before they were amended in 1976, given what the Secretary said—and did not say—in connection with the adoption of the 1976 amendments, and given what Congress said just before the most recent recasting of the regulations in 1980, it seems to me we would not be justified in constru-

ing the language now found in 20 C.F.R. § 404.970(a) as having effected the curtailment in administrative appellate jurisdiction that might seem implicit in the language of the section if the language were to be considered in isolation.

It is indisputable that for many years prior to November of 1976 the regulations gave the Appeals Council the broadest possible discretion to decide if a given decision should be reviewed. (We are not talking now of the standard of review to be used in deciding the merits of the case at the end of the review process, of course; we are addressing only the power of the Council to initiate a review, much in the way the United States Supreme Court initiates a review when it issues a writ of certiorari.) Whether the Council's discretionary power to review was exercised at the request of a party or *ex mero motu*, the power was in no way limited by anything in the text of the pre–1976 regulations. If it compromised the integrity of the factfinding process at the ALJ level, leaving the process exposed to the undue influence of a Secretary anxious to protect the public purse, the fact remains that the Council's broad discretionary review power did in fact exist and had existed for a long time.

On St. Patrick's day of 1976 the Secretary approved a notice of proposed rulemaking that was published a few days later in accordance with the informal rulemaking procedure established by the Administrative Procedure Act. 41 Fed.Reg. 12035 *et seq.* (March 23, 1976). One of the regulatory changes of which notice was there given consisted of the proposed addition of a new section 404.947(a), captioned "Basis for review of the presiding officer's decision or dismissal by Appeals Council." The proposed new section, the stated purpose of which corresponded to its caption, specified four types of situation in which the Appeals Council, "on its own motion or on request for review, will review a hearing decision or dismissal." The description of the four situations in which Appeals Council review "will" be granted is substantially identical to the language now found in § 404.970.

In proposing the new section, the Secretary said nothing about shoring up the integrity of the factfinding process at the hearing officer level. Neither was any such purpose hinted at in the mandatory statement of basis and purpose issued by the Secretary when the proposed amendment was adopted, without change, in November of 1976. If the Secretary's purpose was to limit the scope of the Council's review power, the Administrative Procedure Act suggests it would have been appropriate for him to say so. ("[T]he agency *shall* incorporate ... a concise general statement of [the rule's] basis and purpose." 5 U.S.C. § 553(c) (Emphasis supplied.)) It is significant, therefore, that far from articulating a design to add to the ALJ's independence at the expense of the Council's power to review, the Secretary stated that the amendments "have no major program significance...." 41 Fed.Reg. 51585 (November 23, 1976.)

It is true that the draftsman of the new section did not amend the provision that had long authorized dissatisfied litigants to seek Appeals Council review, or the provision that had long authorized the Council to initiate review on its own motion, in order to make explicit what had always been implicit in those provisions: namely, that the Appeals Council had power to review decisions "for any reason." But by the same token, neither the amended regulations nor the accompanying statement describing their basis and purpose said explicitly that the Appeals Council could *not* continue to review decisions for any reason. If we are to conclude that the purpose of the amendments was to cut back the discretion that the Appeals Council had always enjoyed, therefore, we must reach this conclusion by drawing an inference that would seem highly dubious absent any explicit declaration of a purpose to restrict Appeals Council review.

Is it reasonable, against this background, to read the words of the new section as non-restrictive? I think so, if one bears in mind not only the rulemaking requirements

of the Administrative Procedure Act, but also the fact that before 1976 the regulations gave litigants no hint of the sort of considerations that might move the Appeals Council to exercise its certiorari-like review power. The new section supplied that want. With the introduction of the new section, I think, the agency was telling litigants, in effect, "the Appeals Council will issue what amounts to a writ of certiorari if you can convince the Council that there appears to have been an abuse of discretion in your case, or an error of law, or findings and conclusions not supported by substantial evidence, or if you can persuade the Council that yours is a case presenting a broad policy or procedural issue which may affect the general public interest." By the same token, the agency was saying, "the Council may issue a writ of certiorari on its own motion if it thinks one of these four situations exists." But that is a far cry from saying "the discretionary power the Council has always had to issue a writ of certiorari for any *other* reason is hereby revoked." The new section did not create the discretionary review power of the Appeals Council, and I do not think it curtailed it.

It is worth noting, finally, that the 1980 recodification of the regulations (45 Fed. Reg. 52078 (August 5, 1980)) came eight weeks after Congress, "concerned that there is no formal ongoing review of the Social Security hearing decisions," had directed the Secretary to implement a program of reviewing ALJ decisions on his own motion. (P.L. 96–265, § 304(g), 94 Stat. 441, 456 (1980); House Conf. Rep. No. 96–944, 96th Cong., 2d Sess., *reprinted in* 1980 U.S. Code Congressional and Administrative News, 1392, 1405.) The agency may have missed an opportunity, in the 1980 rulemaking, to state explicitly that the power to review ALJ decisions could still be exercised "for any reason," and to make its usage of language more harmonious with that in other parts of the regulations—as the usage presumably would have been if all the regulations had been written by one person at one time—but if the agency had amended the regulations in 1980 to say what Judge Martin suggests they were intended to mean, it would have been flying in the teeth of the recently announced Congressional determination that own-motion review should be expanded rather than contracted.

Thus I am unable to agree with Judge Martin's interpretation of these rather awkwardly drafted regulations, notwithstanding that I think the language of the regulations could bear the interpretation he urges if divorced from its history.

MERRITT, Circuit Judge, concurring in part and dissenting in part.

The Court appears correct in its general analysis of the statutory and regulatory provisions governing the Appeals Council's standard of review, and that analysis is sufficient to decide the *Shepherd* case.

That general analysis and the facts as stated do not fully describe the problem in the *Mullen* case. In *Mullen* the Appeals Council clearly stated in both its letter to the claimant[1] and in its decision[2] that it

---

1. In its letter to Mr. Mullen of July 10, 1982, the Appeals Council stated:

Dear Mr. Mullen:
....
In deciding to review that decision [of the Administrative Law Judge], the Appeals Council has applied section 404.970 which provides, in relevant part, that a case will be reviewed if the action, findings or conclusion of the Administrative Law Judge are not supported by substantial evidence.
....
The Appeals Council, from its review of the record, has concluded that the Administrative Law Judge's findings and conclusions are not supported by substantial evidence. In reaching this conclusion, the Council considered all the medical evidence and the testimony adduced at the hearing.
....
The Administrative Law Judge's conclusions are not supported by substantial evidence. Accordingly, absent persuasive evidence to the contrary, the Appeals Council is prepared to issue a decision finding that your impairments do not prevent you from engaging in any work activity....
You or your representatives may submit additional evidence or a further written statement as to the facts and the law in your case.

was inquiring only as to whether the ALJ's decision was supported by substantial evidence.

It is so well established as to be beyond dispute that an administrative agency must be held to the standard that it applies, and claims to apply, in the case at hand. *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) ("Since the decision of the Commission was explicitly based upon the applicability of principles of equity announced by courts, its validity must likewise be judged on that basis. The grounds upon which an administrative order must be judged are those upon which ... its action was based."); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) ("A reviewing court ... must judge the propriety of such action solely by the grounds invoked by the agency."). *Accord, Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). Here, however, the Appeals Council appears to have employed a *de novo* standard of review despite saying otherwise. That, in my opinion, is ground for reversal.

The Appeals Council set out for itself in this case a "substantial evidence" standard of review, and it should be held to that standard in this case even though it could have employed the broader standard described in Judge Engel's opinion. Administrative agencies are given broad discretion in performing their appointed tasks, but that discretion is disciplined in no small part by the requirement that they act consistently with their own rules and pronouncements. In this case, however, the Appeals Council is saying one thing and doing another. As Judge Engel states, had the Council actually applied a "substantial evidence" test, it would have had to uphold the ALJ's opinion.

I would not permit the Council to deviate from the standard it expressed. Section 404.970(a) appears to permit the Appeals Council to adopt such a standard of review in individual cases, and I see no reason for us to deny benefits by enforcing a *de novo* standard where the agency has expressly limited its scope of review.

BOYCE F. MARTIN, Jr., Circuit Judge, dissenting, with whom KEITH, JONES, and CONTIE, Circuit Judges, concur.

I quarrel with the majority's interpretation of these regulations and the majority's deference to the Secretary's Appeals Council because the interpretation is illogical and the deference is unfair. I do not dispute that Congress bestowed upon the courts the power to review the *final* decisions of the Secretary. Nor do I dispute that Congress gave the Secretary the power to review decisions of administrative law judges. However, I do believe that the Secretary, by his own regulation 20 C.F.R. § 404.970(a), limited *his* power to review administrative law judge decisions to four specific situations. The Secretary must abide by his own rules. *United States v. Nixon*, 418 U.S. 683, 694–96, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974). These rules require that the Secretary analyze whether the decisions of the administrative law judges are supported by substantial evidence just as the judiciary must do in reviewing administrative law judge decisions which the Secretary adopts as his final decisions. Again, I do not quarrel with the Acts of Congress or the regulations of the Secretary, but only with the

....
Sincerely yours,
[Signed]
Roland L. Vaughn, Jr.
Member, Appeals Council
[Signed]
William C. Taylor
Member, Appeals Council
(App. 133–36)

**2.** After Mr. Mullen adduced additional evidence the Appeals Council in its decision of March 10,

1983, reversed the Administrative Law Judge holding as follows:

> The Appeals Council reviewed this case on its own motion because the Administrative Law Judge's finding that the claimant's maximum sustained work capacity is limited to sedentary work is not supported by substantial evidence.

(App. 8)

majority's interpretation of these regulations and laws.

I remain convinced that the majority's interpretation of 20 C.F.R. §§ 404.969 and 404.970(a) is not sound in light of the plain language of those regulations. Not only is the majority's interpretation incorrect, but the application of the substantial evidence standard to the Secretary's Appeals Council is inequitable. Rather than reading the "may" in section 404.969 to state that the Appeals Council may review *any* administrative law judge decision and translating the "will" of section 404.970(a) to "must" creating four situations where the Appeals Council *must* review administrative law judge decisions, as the majority does, I remain convinced that the better interpretation is that applied in *Newsome v. Secretary of Health and Human Services*, 753 F.2d 44 (6th Cir.1985).

As we stated in *Newsome*, section 404.970(a) limits the Appeals Council's power to review administrative law judge decisions to the four situations listed in that section. If one of those four situations is not present, the Secretary's Appeals Council has no authority to review the administrative law judge's decision and his decision becomes the final decision of the Secretary. To determine whether the Appeals Council has the authority to review the administrative law judge's decision, we as the reviewing court must determine whether, as one of the four situations requires, substantial evidence supports the administrative law judge's decision. If substantial evidence supports the administrative law judge's decision, the Appeals Council's review is improper. The result is that the reviewing court applies the deferential substantial evidence to the administrative law judge's decision whereas the majority applies it to the Appeals Council's decision. Section 404.969 bestows on the Secretary the power to review administrative law judge decisions and limits that power *temporally* to allow review only within sixty days of the administrative law judge decision. Section 404.970(a) provides the criteria as to *whether* the Secretary's Appeals Council may review an administrative law judge decision.

Although the *Newsome* interpretation appears to conflict with *Beavers v. Secretary, Dep't Health, Educ. & Welfare*, 577 F.2d 383 (6th Cir.1978), *Newsome* actually refines *Beavers*. The *Beavers* panel, apparently unaware of the regulations now in question, decided nothing other than the statutory authority of the Secretary. There is no question that the Social Security Act authorizes the Secretary, not the administrative law judge, to make the final decisions. There is also no question, however, that the Secretary may, by regulation, provide that the administrative law judge's decision will be the Secretary's final decision. *See, e.g.,* 20 C.F.R. § 404.955 (circumstances in which the administrative law judge's decision is final). The issue, then, is not whether the Secretary possesses statutory authority to make final decisions; the issue is whether the Secretary has, by regulation, circumscribed the authority of the Appeals Council to upset the findings of fact made by the administrative law judge.

The *Newsome* position has support. First, if the Secretary had intended section 404.969 to allow review of administrative law judge decisions for *any* reason, the regulation would have explicitly stated that. The Secretary has used "for any reason" language in other regulations. *See* 20 C.F.R. § 404.988(a) ("A determination ... may be reopened—(a) Within 12 months of the date of the notice of the initial determination, for any reason"). Because the Secretary has explicitly used the "for any reason" language in the regulations, the courts should not read that language into section 404.969 when the Secretary has decided to leave it out.

Second, the interpretation of "may" as bestowing power and "will" as limiting power is supported by a similar judicial interpretation of two closely analogous regulations. The federal courts, including the Supreme Court, have rejected the majority's interpretation of "may" and "will" when considering 20 C.F.R. § 404.957(b)

and 20 C.F.R. § 404.958, which have since been modified (now codified at 20 C.F.R. § 404.988(b) and 20 C.F.R. § 404.989(a)). Section 404.957(b) provided:

> An initial ... decision *may be* reopened:
>
> ...
>
> (b) After such 12–month period, but within 4 years after the date of the notice of initial determination ... to the party to such determination, upon a finding of good cause for reopening such determination or decision....

(Emphasis added).

Section 404.958 provided:

> "Good cause" *shall* be deemed to exist where:
>
> (a) New and material evidence is furnished after notice to the party to the initial determination;
>
> (b) A clerical error has been made in the computation or recomputation of benefits;
>
> (c) There is an error as to such determination or decision on the face of the evidence on which such determination or decision is based.

(Emphasis added). I fail to detect any difference in the meaning between "shall" and "will"—two forms of the same verb in the same tense—and so I treat them as identical. If the majority's interpretation were applied in the context of sections 404.-957(b) and 404.958, one would expect courts to have held that the Secretary *may* reopen any case on a general showing of "good cause." That is, the particularized criteria in section 404.958 do not exhaust the circumstances in which the Secretary *may* find good cause. Section 404.958 merely states when the Secretary *must* find good cause. But research disclosed not a single case where a court adopted the majority's interpretation and held that the Secretary *may* find good cause in circumstances other than those in which the regulations said that he *shall* find good cause. On the contrary, every court considering the issue

has indicated that the Secretary was permitted to find good cause only when the particularized criteria in section 404.958 were satisfied. *See, e.g., Califano v. Sanders,* 430 U.S. 99, 102, 97 S.Ct. 980, 982, 51 L.Ed.2d 192 (1977); *Gaston v. Richardson,* 451 F.2d 461, 463 n. 2 (6th Cir. 1971); *Ortego v. Weinberger,* 516 F.2d 1005, 1015 (5th Cir.1975); *Ruiz-Olan v. Secretary, Dep't of Health, Education & Welfare,* 511 F.2d 1056, 1057 (1st Cir.1975) (per curiam); *Shelton v. Secretary, Dep't of Health, Education & Welfare,* 428 F.2d 81, 85 (3d Cir.1970). Moreover, the modified version of section 404.957(b) explicitly provides that the Secretary may find good cause *only if* the particularized criteria of the companion regulation are met, *see* 20 C.F.R. § 404.988(b) (Secretary may reopen if he finds "good cause, *as defined in* section 404.989"); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1238 (11th Cir.1983) (Secretary may reopen "*only* for the specific and substantial reasons catalogued in 20 C.F.R. §§ 404.988 and 404.989"), and we have held that the new versions of sections 404.957(b) and 404.958 were effected "without substantive change" in the law, *see Gosnell v. Secretary of Health and Human Services,* 703 F.2d 216, 218 n. 1 (6th Cir.1983). It is indeed curious that although the courts have steadfastly refused to interpret these words to *aid* claimants seeking to reopen their claims, the majority now changes the interpretation when to do so works to the substantial detriment of claimants.

Though several circuits have adopted the reasoning of the majority, the Seventh Circuit, in *Scott v. Heckler,* 768 F.2d 172 (7th Cir.1985), has adopted the *Newsome* analysis after considering the opinions of other circuits which side with the majority opinion here.[1] The *Scott* court stated:

> We think we have an obligation to determine whether the own motion review conducted by the Appeals Council was in fact justified under the standard

---

1. The Seventh Circuit denied rehearing and rehearing en banc in *Scott.* In *Parker v. Heckler,* 763 F.2d 1363, 1365 (11th Cir.1985), the *Newsome* interpretation was embraced, but that

opinion was reversed by a rehearing en banc, *Parker v. Bowen,* 788 F.2d 1512 (11th Cir.1986) (en banc).

by which the Council justified it in theory. To rule otherwise would be to render the hearing before the administrative law judge essentially without effect, subject to the unbridled de novo review of the Appeals Council.

*Id.* at 178.

Our focus should not be on what other circuits decide but on what decision is correct. Yet, we agree with the *Scott* court that the wisdom of the regulations, as interpreted in *Newsome*, cannot be doubted. Only this interpretation protects the integrity of the factfinding process at the administrative law judge level and shields that process from the undue influence of the Secretary who may be biased by his own administrative goals and statistics. If the relatively unbiased administrative law judge determines after a hearing that the claimant deserves benefits, and if that decision is supported by substantial evidence, equity demands that the claimant receive benefits. As long as the administrative law judge decides against the claimant, the Secretary's Appeals Council will affirm. As a reviewing court, we defer to the administrative law judge's decision, adopted by the Secretary, if substantial evidence supports it. We especially give great weight to the findings of the administrative law judge in recognition of the fact that the administrative law judge actually observes the claimant as he testifies. Yet, under the majority's theory, if the administrative law judge awards benefits, the Appeals Council can, by way of a paper review, throw out the administrative law judge's determinations and deny benefits. In fact, nothing prevents the Appeals Council from simply reversing every administrative law judge award determination. Claimants would then be required to appeal to the courts and only if a court did not find substantial evidence to support the Secretary's Appeals Council would the Secretary be required to pay benefits. Social Security claimants who are usually, by definition, in poor health and have a limited income should not be required to fight such an uphill and generally losing battle.

In both the Shepherd and Mullen situations, the majority determined that substantial evidence supports the administrative law judge findings of disability and decisions to award benefits. The majority then independently determined that the Appeals Council findings of no disability and decisions not to award benefits were supported by substantial evidence. Because with the *Newsome* interpretation, the deference of the substantial evidence standard is given to the administrative law judge's findings, and because in both cases the majority has correctly found that substantial evidence supports the administrative law judge findings of disability, I believe that the Appeals Council improperly reviewed the cases. The Appeals Council reviews were not authorized by the Secretary's regulations and therefore the findings of the administrative law judge should have been the findings of the Secretary. On that basis, I respectfully dissent.